747 P.2d 81

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Malefai MOLIGA, Defendant–Appellant.**

**No. 16884.**

Court of Appeals of Idaho.

Dec. 9, 1987.

Jeff M. Brudie, Knowlton & Miles, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

On January 8, 1986, Malefai Moliga obtained approximately $3,500 in cash and jewelry from a retired banker in Lewiston, using what is popularly known as a "pigeon drop" scam.[1] Moliga then left Idaho for Washington. On January 24, 1986, a complaint was filed by the prosecuting attorney for Nez Perce County, Idaho, charging Moliga with grand theft. While Moliga was in Washington, he was charged with the commission of several crimes in that state and, on July 7, 1986, was sentenced to a twenty-two month prison term. On December 10, 1986, Moliga was returned to Idaho, pursuant to the Interstate Agreement on Detainers, I.C. § 19–5001. On January 30, 1987, Moliga pled guilty to the grand theft charge and on February 4, 1987, was sentenced to an indeterminate five-year sentence to be served concurrently with the sentence imposed in the state of Washington. Moliga was given credit for the time he served in jail in Idaho, from December 10, 1986, to February 4, 1987, while awaiting sentencing.

The only issue on appeal is whether the district court erred in not allowing further credit for the time Moliga served in jail in Washington between July 7, 1986, and December 10, 1986. Moliga contends that he was available to face charges in Idaho any time following his July 7th sentencing in Washington, but that the state of Idaho sat

---

1. In his report to the police, the victim related the following scenario. Moliga approached the victim at a shopping center in Lewiston and, representing himself to be a Nicaraguan, informed the victim that he, Moliga, had to distribute $120,000 to a charity. Moliga explained that he had received the money as an insurance settlement on the death of Moliga's brother and that the brother had requested any such proceeds be distributed to a charity outside of Nicaragua so that "communists" would not get any part of it. Moliga offered the victim $20,000 for his "assistance" in locating a worthy charity. To assist the victim in disposing of the money, Moliga recruited another man who was walking by. Moliga told the stranger the "whole story" and offered this man $20,000 also. Moliga showed both of them two rolls of hundred dollar bills in his pocket. Moliga proposed dividing the $120,000 equally between the victim and the stranger, allowing each of them to keep $20,000 for themselves, and letting them jointly decide upon, and distribute the balance to, a charitable donee. However, Moliga expressed concern whether he really could trust the victim and the stranger. The stranger offered to withdraw money from his own bank account, to show the other two that he had ample money of his own. He left and returned with $8000. The stranger then expressed concern over whether he could trust Moliga and the victim. Moliga suggested that the stranger give the $8000 to the victim; that the victim and Moliga would walk around the block; and that they would return to the stranger, with the money, to show they were trustworthy. The stranger agreed and gave the money to the victim. When the victim and Moliga returned from their walk around the block, it appeared it was the victim's turn to let Moliga and the stranger express their good faith and trustworthiness. The victim went to his bank, withdrew $3,000 in cash and a diamond worth $500 from his safety deposit box and gave it to Moliga and the stranger. Moliga and the stranger promptly walked off, turned the corner and never returned.

"idly by" and did nothing. For the reasons given below, we uphold the district court's refusal to give the credit sought by Moliga.

■ A brief review of the statutory detainer agreement is in order. Idaho Code § 19–5001(a) lists as a specific purpose that:

it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.

The procedure under the detainer agreement can be initiated either by the prisoner in the sending/custodial state or by the prosecutor or state official in the receiving state who has an untried indictment, information or complaint. When a prisoner initiates the procedure under the agreement, the prisoner has a right to a final disposition on any untried matter within 180 days after delivery of notice of the prisoner's place of imprisonment and a request by the prisoner for disposition of the charge pending against him. I.C. § 19–5001(c)(1).

Under the prosecutor-initiated method, the prosecutor must file a written request for temporary custody of the prisoner with the custodial state. The receiving state must commence the trial of the accused within 120 days of the arrival of the prisoner in the state. I.C. § 19–5001(d)(3). The detainer statute thus contemplates expeditious disposition of charges against individuals within the specified time limitations. If the state fails to meet those requirements, the outstanding charge against the prisoner should be dismissed. *Rockmore v. State,* 21 Ariz.App. 388, 519 P.2d 877 (1974); *People v. Lincoln,* 42 Colo.App. 512, 601 P.2d 641 (1979).

In the instant case, a document entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints" was executed by Moliga on November 4, 1986, postmarked November 5, 1986 and received by the Nez Perce County Prosecutor on November 13, 1986. Moliga concedes that the time limitation requirements of the agreement have been met by Idaho but he insists that the state "mistreated" him by not prosecuting him with greater rapidity.[2] We disagree.

■ The record is unclear as to exactly how Moliga came to the attention of the Washington authorities, but it is clear he was held on Washington charges until his sentencing on July 7, 1986. Moliga would have us consider the time from July 7 forward, while he was serving a sentence in Washington for crimes committed in Washington, as applicable towards his eventual Idaho sentence. We hold that Moliga is not entitled to such credit.

I.C. § 18–309 provides:

In computing the term of imprisonment, the person against whom the judgment was entered, shall receive credit for any period of incarceration prior to entry of judgment, *if such incarceration was for the offense or an included offense for which the judgment was entered.* The remainder of the term commences upon the pronouncement of sentence and if thereafter, during such term, the defendant by any legal means is temporarily released from such imprisonment and subsequently returned thereto, the time during which he was at large must not be computed as part of such term. [Emphasis added.]

In *In Re Rojas,* 23 Cal.3d 152, 151 Cal. Rptr. 649, 588 P.2d 789 (1979), the California Supreme Court construed a California statute (§ 2900.5(b)) which is similar in concept to our I.C. § 18–309. In *Rojas,* the petitioner had been convicted and sen-

---

**2.** We also note that Moliga contends that the failure of the State of Idaho to act upon his matter precluded him from certain prison privileges in the State of Washington. The establishment of criteria for granting or denying privileges rests solely with the Washington Board of Corrections. The proper remedy is to challenge the reasonableness of those regulations in Washington rather than to challenge the speed of the State of Idaho's response to his detainer. *See Caruso v. United States Board of Parole,* 570 F.2d 1150 (3d Cir.1978), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978); *Anglian v. Sowders,* 566 S.W.2d 789 (Ky.App.1978); *Bush v. Canary,* 286 N.W.2d 536 (S.D.1979).

tenced for manslaughter. While serving that sentence he was prosecuted for another, unrelated homicide. After he was found guilty of second degree murder, and sentenced for that offense, he filed an application for a writ of habeas corpus, seeking credit for time spent in jail awaiting prosecution on the second homicide. The California statute provided: "For the purpose of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." Applying the statute, the California Supreme Court held that the petitioner was not entitled to credit toward his sentence for that period of presentence time spent in custody when he was simultaneously serving a prison term for the prior, unrelated manslaughter offense.

The California court observed:

As we noted in *In re Watson*, supra, 19 Cal.3d 646, 651, 139 Cal.Rptr. 609, 566 P.2d 243 "[section 2900.5] pertains to the *pretrial* incarceration of a person charged with crime but not yet tried much less convicted, and therefore clothed with the presumption of innocence.... [¶] The crucial element of the statute is not where or under what conditions the defendant has been deprived of his liberty but rather whether the custody to which he has been subjected 'is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted.' (§ 2900.-5, subd. (b).)" (Italics in original, p. 651, 139 Cal.Rptr. p. 612, 566 P.2d p. 246.)

There is no reason in law or logic to extend the protection intended to be afforded one merely *charged* with a crime to one already incarcerated and serving his sentence for a first offense who is then charged with a *second* crime. As to the latter individual the deprivation of liberty for which he seeks credit cannot be attributed to the second offense. Sec-

tion 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty.

... [W]e conclude that defendant was not deprived of his liberty as a result of the conduct which resulted in his conviction of second degree murder in September 1973. His incarceration was due to his previous conviction of manslaughter in January 1972.

*Id.* 151 Cal.Rptr. at 652, 588 P.2d at 792 (Emphasis original.)

Other courts have arrived at conclusions similar to that expressed in *Rojas.* See *Woodson v. State*, 178 Ind.App. 692, 383 N.E.2d 1096 (1978) (defendant not entitled to receive credit on Indiana robbery sentence while he was an escapee and incarcerated in another jurisdiction for another crime); *Cooley v. State*, 172 Ind.App. 199, 360 N.E.2d 29 (1977) (defendant not entitled to credit in Indiana for presentencing time which elapsed while defendant was serving a sentence in an Illinois penitentiary upon a totally different offense); *Smith v. State*, 165 Ind.App. 37, 330 N.E.2d 384 (1975) (defendant not entitled to credit, in state prosecution, for interim period of incarceration occasioned by conviction in federal court on unrelated charges) [3]; *State v. Dawn*, 45 Ohio App.2d 43, 340 N.E.2d 421 (1975) (defendant not entitled to credit for time served on a prior conviction in another jurisdiction toward a later, totally unrelated conviction, even where such prior conviction was later vacated and the defendant discharged therefrom).

We have reached a similar result in a case where a defendant was incarcerated in another state and was later returned to Idaho on a probation violation. In *State v. Teal*, 105 Idaho 501, 670 P.2d 908 (Ct.App. 1983), the defendant fled from Idaho while on probation. He eventually was arrested in California on criminal charges and sent to prison there. A detainer was filed on

**3.** The Indiana statute, applied in *Woodson, Cooley* and *Smith,* supra, provided:

When sentencing any person convicted of a crime the sentencing court shall order that the sentenced person be given credit toward service of his sentence for any days spent in confinement as a result of the criminal charge for which sentence is imposed or as a result of the conduct on which such charge is based. Indiana Code 35–8–2.5–1, Ind.Ann.Stat. § 9–1828 (Burns Supp.1974) (repealed 1978).

the probation violation and Teal was returned to Idaho, where a probation violation hearing was held. Teal's probation was terminated, and the district court ordered execution of the original sentences, to be served concurrently with the California sentence. On appeal, Teal sought credit for his time served in California. We held:

> Teal was given credit for 161 days spent in Idaho custody under I.C. § 18-309 on the forgery charge only. Now Teal contends that, in addition to the time he actually spent in custody in Idaho, he should be given credit against his Idaho sentences for all the time elapsed since he was arrested and confined in California. However, *Teal's arrest and confinement in California, before he was delivered to the Idaho authorities, had nothing to do with the Idaho convictions.* Therefore, Teal is not entitled to credit for any time spent in California custody, other than the concurrent operation of the Idaho and California sentences after his probation was revoked in Idaho on May 3, 1982. *See* I.C. §§ 18-309, 19-2602 and 19-2603.

*Teal* at 504, 607 P.2d at 911. (Emphasis added.)

We perceive no distinction applicable to Moliga. We hold that the district court properly allowed credit only for time served in confinement related to the Idaho charges. According to the record, that time started on December 10, 1986.

 Moliga also complains that the delay by the State of Idaho effectively eliminated any possibility of his prison terms in Idaho and Washington running concurrently and resulting in his gaining release without having to transfer to Idaho to finish, or to receive parole on, the remaining Idaho sentence. A similar argument was made to the Indiana Court in *Bewley v. State*, 247 Ind. 652, 220 N.E.2d 612 (1966). There, while serving another sentence in the state reformatory, the appellant was brought to trial and convicted of armed robbery. The appellant contended that had he been convicted earlier, he would have served the sentence in the instant case concurrently with the one he was then serving at the state prison. The Indiana court held:

> We think this point may be disposed of by saying that there is no constitutional right on the part of a criminal to serve his sentences concurrently for various crimes. To so hold would minimize the penalty for the commission of additional crimes, since the sentences could all be served more or less concurrently.

*Id.* at 613, 220 N.E.2d 612.

We agree that concurrency of sentences is controlled by statute and is not constitutionally required. Moliga's sentence conformed with I.C. § 18-309. Therefore, the judgment and sentence of the district court, including the order on credit for time served, is affirmed.

BURNETT and SWANSTROM, JJ., concur.