**In the Matter of the Revocation of the Parole of Willie WILLIAMS III.**

**No. 17719.**

Supreme Court of South Dakota.

Considered on Briefs March 19, 1992.

Decided July 1, 1992.

Rehearing Denied July 27, 1992.

---

Douglas E. Hoffman of Gibbs, Feyder, Myers, Peters & Butler, Sioux Falls, for appellant Willie Williams III.

David O. Carter, Sioux Falls, for appellee S.D. Bd. of Pardons & Paroles.

MILLER, Chief Justice.

Willie Williams III (Williams) appeals a circuit court judgment affirming an order of the Board of Pardons and Paroles revoking his parole. We affirm the circuit court judgment.

### FACTS

Williams was charged with first degree rape in October 1981. He was arrested and placed in jail on October 14, 1981. Williams was convicted of first degree rape in December 1981 and was sentenced to fifteen years in the state penitentiary.

SDCL 24–5–1 provides that inmates are entitled to deduct specified amounts of time for each year of "good conduct." Up to six years of time could be deducted from Williams' sentence if he maintained "good conduct" while serving his sentence. Consequently, Williams' tentative "good conduct" release date was October 14, 1990.

On December 21, 1984, Williams was paroled from the 1981 rape sentence. Williams signed the standard parole "Agreement" which provided, in part: "In the event I am returned to the institution, and my parole is revoked, I understand that I may lose any or all of my Good Time." Under his parole agreement, Williams was allowed to move back to his home state of South Carolina.

On August 21, 1987, Williams was indicted and convicted of "Fraudulent Checks" in South Carolina. He was sentenced to one year in prison but the sentence was suspended. On February 2, 1988, the South Dakota Board of Pardons and Paroles (hereinafter "the Board") was informed of the South Carolina conviction and issued a warrant for the arrest of Williams. No parole revocation hearing was held at that time.

Meanwhile, in May 1988, Williams was charged with murder in South Carolina. He was again taken into custody by South Carolina officials and was tried and convicted of murder. Williams remained incarcerated in South Carolina during his appeal of the murder conviction. The murder conviction was reversed and remanded on January 7, 1991. Williams was held in custody pending retrial.

On February 26, 1991, the South Dakota State Penitentiary sent a computer message to the Charleston County Jail informing them that the Board had issued a warrant for the arrest of Williams. The message specifically stated "THIS IS A "NO BOND" SITUATION! ! ! !"

Williams was entitled to post bond in South Carolina pending his retrial on the murder charge. When Williams posted the requisite bond in South Carolina he was detained under the South Dakota warrant. Williams was returned to South Dakota on April 3, 1991.

Back in South Dakota, Williams was given notice that a parole revocation hearing would be held on April 26, 1991. During that parole revocation hearing, in response to direct questioning by the Board, Williams admitted that he had been convicted of "fraudulent checks" in South Carolina in 1987. The Board found that Williams had violated the terms of his parole and entered an order revoking Williams' parole with the loss of six years good time credit.

Williams appealed the order revoking parole to the circuit court. The circuit court affirmed the decision of the Board. Williams appeals to this Court.

## DECISION

The following chronology emphasizes the important dates which are relevant to this appeal.

1. Williams was convicted of rape in South Dakota in 1981.

2. Williams was paroled in December 1984.

3. Williams was convicted of "fraudulent checks" in South Carolina on August 21, 1987.

4. On February 2, 1988, the Board of Pardons and Paroles issued a warrant for Williams' arrest for alleged parole violations.

5. Unless the running of Williams sentence was tolled by the issuance of the 1988 warrant, under the "good conduct" provisions of the South Dakota statutes, Williams' sentence for the 1981 rape conviction was fully satisfied on October 14, 1990.

6. Williams was arrested in South Carolina under the 1988 warrant and was returned to South Dakota in early April 1991.

7. The Board of Pardons and Paroles held a hearing and entered an order revoking parole on April 26, 1991 based on the 1987 "fraudulent check" conviction.

WHETHER THE ISSUANCE OF AN ARREST WARRANT FOR AN ALLEGED PAROLE VIOLATION SUSPENDED THE RUNNING OF WILLIAMS' PAROLE SUPERVISION TIME.

Williams argues that the Board had no authority to revoke his parole because he maintains his sentence had already been fully served. The Board contends that their February 2, 1988 warrant suspended the running of his parole supervision time. They rely on SDCL 24–15–21 which *currently* provides:

If the executive director of the board is satisfied that any provision of § 24–15–20 has been violated, the executive director may issue a warrant to the department of corrections, any law enforcement officer, or any parole agent, directing that the parolee named be arrested. Pursuant to the provisions of § 24–15–23 the parolee may be returned to the state penitentiary. *Upon the issuance of the warrant, the running of the parole supervision time shall be suspended until the board has entered its final order on the revocation.* The board shall credit the inmate with time spent in custody as a direct result of the parole violation. (emphasis added).

Thus, the statute currently in effect clearly specifies that the issuance of a warrant suspends the running of parole supervision time. Williams' case presents a special problem because that provision in the current version of SDCL 24–15–21 was not enacted until 1986, five years after Williams was convicted and two years after he was paroled. The version of the statute in effect when Williams was convicted and paroled did not contain the sentence which suspends the running of parole supervision time upon the issuance of a parole violation arrest warrant.

■ Williams argues that the application of that 1986 version of the statute to him is a violation of the ex post facto prohibitions in the United States Constitution. Two elements must be present for a criminal or penal law to be considered ex post facto. *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981) "[I]t

must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* (footnotes omitted).

In this case SDCL 24–15–21 was not being applied retrospectively. Williams argues that the 1986 statute was being applied to his 1981 conviction or his 1984 parole. In reality, the 1986 statute was applied to his 1987 parole violation. SDCL 24–15–21, including the provision regarding the suspension of parole supervision time, was enacted and in effect before Williams was convicted of passing fraudulent checks in South Carolina. Thus the 1986 statute was not being applied to conduct which occurred before its enactment. There was no retrospective application and accordingly there is no valid ex post facto objection.

The issuance of the warrant in 1988 suspended the running of Williams' parole supervision time. The Board had authority to revoke Williams' parole.

WHETHER THE BOARD OF PARDONS AND PAROLES HAD AUTHORITY TO REDUCE WILLIAMS' GOOD TIME CREDITS.

When Williams was convicted and sentenced the Board of Pardons and Paroles had no explicit statutory authority to reduce a parolee's good time credits because of a parole violation. In 1983, SDCL 24–15–24 was amended to provide that if the Board determined a parole violation had occurred, "the board is authorized to order the reduction of time in full or in part for good conduct granted under § 24–5–1."

Williams was paroled in 1984. As a condition of his parole he signed a parole agreement in which he acknowledged that if he violated parole his good time credits could be revoked. Williams was found to have violated his parole and all six years of his good time credit were revoked. Williams argues that the Board had no authority to revoke his good time credits absent the 1983 amendment of the statute. He argues that application of the statute was ex post facto.

The 1983 statute authorized the Board to reduce an inmate's good time credits for parole violations. This 1983 statute was enacted and in effect when Williams was paroled in 1984. Moreover, Williams agreed in 1984 that the Board of Pardons and Paroles could revoke his good time credit if he violated parole. Again, there was no retrospective application of the 1983 statute.

We affirm the decision of the circuit court.

WUEST and SABERS, JJ., concur.

HENDERSON and AMUNDSON, JJ., dissent.

HENDERSON, Justice (dissenting).

Though freedom is at stake, this is an administrative appeal under SDCL Ch. 1–26. It emanates from a final Order of the State Board of Pardons and Paroles. By the Order, affirmed by the trial court, Willie Williams, III, a black man, imprisoned in the South Dakota State Penitentiary, is further incarcerated; this man's parole was purportedly revoked with this result: He loses 6 years "good time credits," which he deserved, under SDCL 24–15–24.

Essentially, two issues are framed under the facts of this case and fully briefed before us:

1. Did the revocation of Williams' parole, *6 months after the expiration of his sentence*, violate his constitutional and statutory rights?
2. Applying SDCL 24–15–24, did the Parole Board unconstitutionally violate Williams' "good time" credits by the unconstitutional violation of an ex-post facto law?

SDCL 24–15–24, as amended, was enacted *after the commission of the crime* for which Williams was convicted. Ch. 201, 1983 S.D.Sess.Laws. This decision wrongfully approves of the board's action and the trial court's decision. One, Williams' punishment is increased, which should not be because this statute is ex-post facto as applied to his case. Two, the Parole Board's order was entered over 6 months after his sentence expired; thus, the Board's action to reincarcerate Williams was without legal authority.

There is no evidence in the record to establish that Williams did not serve his time under the definition of "good conduct." Williams was first incarcerated on October 14, 1981. His "good conduct" release was, therefore, October 14, 1990.

SDCL 24–5–2 is important to our consideration. It provides:

> Whenever any inmate has been discharged under the provisions of § 24–5–1 [good time conduct], he shall at the time of his discharge be considered as restored to the full rights of citizenship. At the time of the discharge of any inmate under the provisions of this chapter, he shall receive from the secretary of corrections a certificate stating that he has been restored to the full rights of a citizen. *If an inmate is on parole at the time he becomes eligible for discharge the secretary of corrections shall issue a like certificate*, which shall be due notice that such inmate has been restored to the full rights of a citizen. (emphasis supplied mine).

A hearing was held by the Board of Pardons and Paroles based on the 1987 "fraudulent check" conviction. *This hearing took place on April 24, 1991.* However, *two days before this hearing, this Board found that Williams violated the terms of his parole.* This, in itself, should prove fatal to the Board's case. Later, the Board said this was a "typographical error." Williams, under my thesis, still wins this appeal assuming there was a "typographical error." For, the South Carolina Court entered an order on *April 16, 1991*, which specifically provided:

> IT IS ORDERED that all records relating to such arrest and subsequent discharge pursuant to the above referenced section be dismissed, expunged and immediately destroyed and that no evidence of such records pertaining to such charge shall be retained by any municipal, county or state agency.

Williams' record of the 1987 "fraudulent check" charge does not exist. So how can the Parole Board build a revocation—and a reincarceration—on a crime that does not exist? It appears that the only evidentiary discourse, at the parole revocation hearing, came from Williams, who told the Board that the IRS seized his bank accounts because he was involved in a partnership in South Carolina. Therefore, he told the Board, his checks bounced. The fraudulent check charges resulted from this seizure; the South Carolina court set aside the conviction, in its entirety, and the Board should have recognized the South Carolina order. It did not. Although in good faith, the Board acted improvidently.

Enter the murder charge: Williams was charged with murder, convicted of murder, incarcerated for murder, *but the murder conviction was reversed.* Said reversal was entered on or about the 7th day of January, 1991. On February 26, 1991, notwithstanding the above, the *State Penitentiary sent a computer message* to the Charleston County Jail imploring the South Carolina authorities to hold Williams and expressed, with gusto, that this was a "no bond situation."

Examining the dates, it appears the Board of Pardons and Paroles revoked Williams' parole based upon a conviction which did not exist. Pointedly, the fraudulent conviction ceased to exist on April 16, 1991, and the Board revoked the parole on April 26, 1991 (under the "typographical error" theory). Thus, a miscarriage of justice exists. There can be doubt, at least in the mind of this writer, that such an error constitutes plain error and a reversal of the Board and the trial court is now mandated. SDCL 23A–44–15 provides:

> Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court.

*See also, State v. Lewandowski*, 463 N.W.2d 341 (S.D.1990) and *State v. Brammer*, 304 N.W.2d 111 (S.D.1981).

For benefit of the reader, the salient facts are:

1. Williams was convicted of Rape in South Dakota in 1981.

2. Williams was paroled in December 1984.

3. Williams was convicted of "fraudulent checks" in South Carolina on August 21, 1987.

4. The Board of Pardons and Paroles issued a warrant for Williams' arrest for alleged parole violations on February 2, 1988.

5. Under the "good conduct" provisions of the South Dakota statutes, Williams' sentence for the 1981 rape conviction was fully satisfied on October 14, 1990.

6. In late February or early March 1991, Williams was arrested in South Carolina under the 1988 warrant. Williams was returned to South Dakota in early April 1991.

7. On April 16, 1991, a South Carolina court expunged Williams' record of the 1987 "fraudulent check" conviction.

8. The Board of Pardons and Paroles held a hearing on whether to revoke parole and entered an order revoking parole on April 26, 1991 based on the 1987 "fraudulent check" conviction.

Under the applicable law, and the circumstances of this case, the issuance of an arrest warrant for an alleged parole violation did not toll the running of Williams' parole supervision time.

Per SDCL 24–5–2, if the running of Williams' sentence was not tolled for some reason, Williams' sentence was fully served on October 14, 1990. *If a sentence is fully served, the Board of Pardons and Paroles no longer has authority to incarcerate a convict, nor may they revoke his parole or take away any good time credit. See generally,* 59 Am.Jur.2d Pardons & Paroles § 113. This is not disputed by the Board of Pardons and Paroles. But the ultimate quest in law does not end there.

Board of Pardons and Paroles contends, when they issued the February 2, 1988 warrant for Williams' arrest, the running of his sentence was tolled. They rely on SDCL 24–15–21. SDCL 24–15–21 *currently* provides:

If the executive director of the board is satisfied that any provision of § 24–15–20 has been violated, the executive director may issue a warrant to the warden of the penitentiary, any law enforcement officer, or any parole agent, directing that the parolee named be arrested and returned to the state penitentiary under the terms of his original conviction and sentence pending a hearing on the alleged violations. *Upon the issuance of the warrant, the running of the parole supervision time shall be suspended until the board has entered its final order on the revocation.* The board shall credit the inmate with time spent in custody as a direct result of the parole violation. (emphasis supplied mine).

A problem arises because that version of SDCL 24–15–21 was not enacted until 1986, *five years after Williams was convicted and two years after he was paroled.* The version of the statute in effect when Williams was convicted and paroled did not contain that very important sentence which would operate to automatically toll the running of a parolee's sentence if a warrant was issued for his arrest. Resultantly, the statute in effect at the time of Williams' conviction and parole was insufficient in this regard. To correct that insufficiency, the State Legislature amended SDCL 24–15–21 in 1986 by adding the sentence emphasized above.

Williams argues that the application of that 1986 version of the statute to him is a violation of the ex post facto prohibitions in the United States Constitution.

The United States Supreme Court has stated that the United States Constitution's two provisions regarding ex post facto laws prohibit the federal and state legislatures from enacting any law, "which imposes a punishment for an act which is not punishable at the time it was committed; or *imposes additional punishment to that then prescribed.*" *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17, 22 (1981) (emphasis added) *citing Cummings v. Missouri,* 71 U.S. (4 Wall) 277, 18 L.Ed. 356 (1867). Therein, Williams now impaled, should be extracted from the minions of the law.

Supreme Court cases of older vintage list general categories of statutes which constitute ex post facto laws. However, in re-

cent cases the Supreme Court has applied a more straightforward analysis when faced with ex post facto claims.

> Our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto; it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.

*Weaver*, 450 U.S. at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23 (footnotes omitted).

When Williams was convicted and paroled the issuance of a warrant for parole violation did not automatically toll the running of a sentence. Under the law in effect at the time he was convicted and paroled, his sentence would have continued to run and would have been fully served on October 14, 1990. Consequently, the Board of Pardons and Paroles would have had no authority over him after that date. They could not have revoked his parole in April 1991 or stripped him of six years good time credit. Rather, and wrongfully, the Board of Pardons and Paroles applied the version of the statute enacted in 1986. As a result, Williams' parole was revoked. Thus, he is being made to serve more time than he could have been made to serve if the prior version of the statute had been applied. Williams contends that the law was applied retrospectively to his disadvantage. Thus, he contends it was unconstitutionally applied in an ex post facto manner. I agree.

Hence, the 1986 statute was applied in an ex post facto manner. Williams' sentence was not tolled and therefore expired on October 14, 1990. On that date, the Board of Pardons and Paroles had no authority to revoke his parole. Accordingly, the circuit court should be reversed because the said Board acted outside of the rule of law.

When Williams was convicted and sentenced, the Board of Pardons and Paroles had no explicit statutory authority to reduce a parolee's good time credits for a parole violation. In 1983, SDCL 24–15–24 was amended to specifically provide that if the Board of Pardons and Paroles determined a parole violation had occurred, "... the board is authorized to order the reduc-

tion of time in full or in part for good conduct granted under § 24–5–1."

Williams was paroled in 1984. As a condition of his parole, he signed a parole agreement in which he acknowledged that if his parole was violated his good time credits could be revoked.

True, Williams was found to have violated his parole and all six years of his good time credits were revoked. Williams counters, however, that the Board of Pardons and Paroles had no authority to revoke his good time credits absent the 1983 amendment of the statute. He argues that application of the statute was ex post facto. I agree.

Without the 1983 statute, the Board of Pardons and Paroles had no authority to take away good time credits. Under the law in effect at the time Williams was convicted, the worst scenario for Williams was that he could have his parole revoked. When the 1983 statute was applied to him, Williams had his parole revoked and had six years of good time credit revoked. Being stripped of his good time credits, Williams will have to spend six extra years confinement that could not have been imposed without the 1983 statute. In my opinion, that is wrong. Williams' contention that the 1983 statute was applied in a retrospective manner, thus slamming the prison cell for 6 more long years, is correct. It must be hell to serve 6 years when you have earned 6 years good time credits. I feel for Willie Williams, III, and hereby, in my limited way, I champion his legal cause, believing it is meritorious.

It might be argued, as a legal premise, that Williams agreed that the Board could take away his good time credits if he violated parole. Where, however, under the state of this record, as pertains to the alleged violations of parole, has Williams done so? Voluntarily choosing parole did not give the Board the right to act beyond the law which then existed. Nor did it give the Board the right to revoke his constitutional and statutory rights. With this, my reflections are at end, I weary, and lay down my pen, convinced that this man is entitled to his freedom.

**674**

*CAVEAT*

*For Whom The Bell Tolls* [1]

If we want prisoners to change, public attitude toward prisoners and ex-prisoners must change. We have some community efforts along those lines in this country but with few exceptions it is thin and scattered and not well organized and few of the participants are well trained.

*Delivery of Justice* at 318.

Collectively, we take on a moral burden when we put a person behind walls *and that burden is to give him or her a chance to change.*

*Delivery of Justice* at 322.

*MORE WAREHOUSES, OR FACTORIES WITH FENCES?* [2]

Rewards and punishments permeate the lives of all free people and they should not be denied to prison inmates. Central to the American system is the idea that good performance is rewarded and poor performance is not.

*Delivery of Justice* at 342.

Willie Williams' performance in prison was good. He deserves his good time credits.

I am authorized to state that Justice AMUNDSON joins this dissent on Issue II, pertaining to the ex post facto law, and that he would reverse on that point.

---

**1.** From the book, DELIVERY OF JUSTICE, by Warren E. Burger, Chief Justice of the United States, 1969—1986, the College of William and Mary Press and West Publishing Co., St. Paul, Minnesota, at Association of the Bar of the City of New York City, February 17, 1970.

**2.** Lecture at University of Nebraska, Lincoln, Nebraska, December 16, 1981, by Chief Justice Warren E. Burger.