1997 SD 67

**Alvia O. LEWIS, Applicant
and Appellant,**

v.

**Joe CLASS, Warden of the South Dakota
State Penitentiary, Appellee.**

**No. 19651.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1997.

Decided June 4, 1997.

Edward G. Albright, Office of Public Defender, Rapid City, for applicant and appellant.

Mark Barnett, Atty. Gen., Michele K. Bennett, Asst. Atty. Gen., Pierre, for appellee.

MOSES, Circuit Judge.

[¶ 1] This is an appeal from the circuit court's denial of writ of habeas corpus. Alvia O. Lewis (Lewis) contends that the South Dakota Board of Pardons and Paroles refusal to give him credit for the sixteen months that he was serving in the Colorado State Penitentiary was a violation of the constitutional prohibition against ex post facto laws. We affirm.

## FACTS

[¶ 2] On September 27, 1985, Lewis was sentenced on charges of aggravated assault and third degree burglary in Pennington County.

[¶ 3] On the aggravated assault charge, Lewis received a suspended imposition of sentence, was placed on probation for four years and ordered to serve six months in the Pennington County Jail. On the third degree burglary charge, Lewis received a suspended imposition of sentence, was placed on probation for four years, and ordered to serve sixty days in the Pennington County Jail. The county jail sentences on both charges were to run consecutively, however, the terms of probation were to run concurrently.

[¶ 4] Lewis admitted a probation violation on both charges on February 27, 1987. The circuit judge revoked his suspended imposition of sentence on March 9, 1987. The judge ordered Lewis to be committed to the South Dakota State Penitentiary for ten years, with five years suspended on each count.

[¶ 5] Lewis was released on parole on June 12, 1990, with supervision in the state of Colorado through the Interstate Compact Agreement. SDCL 24-16-1 to SDCL 24-16-5. On May 20, 1993, Lewis was sentenced in Colorado to four years plus parole on a vehicular assault charge. While Lewis was imprisoned in the Colorado Penitentiary, the South Dakota Board of Pardons and Paroles issued a warrant of arrest for an alleged parole violation.

[¶ 6] Pursuant to SDCL 24-15-21 the South Dakota Board of Pardons and Paroles alleged that it was authorized to suspended

the running of the parole time from when the warrant was issued on June 15, 1993, to the final parole revocation on October 16, 1994. After issuance of a detainer Lewis was returned to South Dakota for a parole revocation hearing on October 26, 1994.

[¶ 7] Lewis asked the Colorado court to allow him to serve his Colorado and South Dakota sentences concurrently. The Colorado court denied his request. He also asked South Dakota Board of Pardons and Paroles for credit for the time that he had spent in the Colorado Penitentiary from the time the warrant of arrest was issued on June 15, 1993, to the final revocation order on October 16, 1994. This request was also denied. Lewis' parole was revoked and he was sentenced to the five years remaining on his suspended sentences.

## STANDARD OF REVIEW

■ [¶ 8] Since habeas corpus is in the nature of a collateral attack on a final judgment, the scope of review is limited to:

(1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights.

*Petrilli v. Leapley,* 491 N.W.2d 79, 81 (S.D. 1992).

■ [¶ 9] In context of post conviction attacks on the conviction itself, habeas corpus reaches only jurisdictional error. *Goodroad v. Solem,* 406 N.W.2d 141 (S.D.1987). Ex post facto claims are an issue of law, and are reviewed de novo with facts being set aside only if clearly erroneous. *State v. Karp,* 527 N.W.2d 912 (S.D.1995).

## ANALYSIS

■ [¶ 10] SDCL 24–15–21 was amended in 1986 and provides:

*If the executive director of the board is satisfied that any provisions of § 24–15–20 has been violated* the executive director may issue a warrant to the Department of Corrections, any law enforcement officer, or any parole agent, directing that the parolee named be arrested. Pursuant to the provision of § 24–15–23, the parolee may be returned to the state penitentiary. *Upon the issuance of the warrant, the running of the parole supervision time shall· be suspended until the board has entered its final order on the revocation. The board shall credit the inmate with time spent in custody as a direct result of the parole violation.* (emphasis added).

[¶ 11] Lewis is seeking credit for the sixteen months he served from the issuance of the South Dakota Board of Pardons and Paroles arrest warrant on June 15, 1993 to the final parole revocation hearing on October 16, 1994.

[¶ 12] Lewis points out that his original offenses of aggravated assault and third degree burglary were committed in 1985 prior to the 1986 amendment to SDCL 24–15–21 allowing the suspension of the parole violation. He argues that since the parole violation was related to these original offenses, the denial of credit to him for the sixteen months served in Colorado after the issuance of the arrest warrant is a violation of the ex post facto clause.

[¶ 13] The state argues that SDCL 24–15–21 only applies to parolees at large and it did not apply in Lewis' case since he was not at large. It argues that SDCL 24–15–21 amended in 1986 was in effect when his probation was revoked, when he was sentenced to the South Dakota State Penitentiary, and when his parole was revoked in October 1994. It is therefore the state's position that it is not an ex post facto law.

[¶ 14] The trial court held that Lewis was not entitled to sixteen months credit for time served in Colorado. SDCL 24–15–21 was applicable to Lewis because the statute was in effect when he was under the control of the executive branch and subject to the South Dakota Board of Pardon and Paroles. Relying on *State v. Karp,* 527 N.W.2d at 913, the trial court stated that sentences must be served consecutively because the defendant is "under process of law" and not entitled to credit for time served.

[¶ 15] The United States Supreme Court has held that ex post facto clause is aimed at laws that "retroactively alter the definition of

crimes or increase the punishment for criminal acts." *Cal. Dept. of Corrections v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588, 594 (1995). The South Dakota Supreme Court has explained the ex post facto prohibition.

> In *Delano v. Petteys,* 520 N.W.2d 606, 608 (S.D.1994), this Court stated:
>
> > The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed....'

*State v. McGill,* 536 N.W.2d 89, 93 (S.D. 1995).

[¶ 16] The constitutional prohibition on ex post facto laws applies only to statutes that impose penalties, are retrospective, and in general, are not procedural nor change the ingredients of the offense or the ultimate facts necessary to establish guilt. *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718–19, 111 L.Ed.2d 30 (1990) *on remand Youngblood v. Collins,* 909 F.2d 803 (5th Cir.1990); *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Snyder v. State,* 912 P.2d 1127 (Wyo.1996); *Stumes v. Delano,* 508 N.W.2d 366 (S.D.1993).

[¶ 17] The purpose underlying the proscription against ex post facto legislation is to ensure that legislative enactments provide "fair warning of their effect," in order that individuals may rely on the meaning and extent of the statutes until they have been formally and explicitly revised. *Weaver v. Graham, supra; See People v. Bowring,* 902 P.2d 911 (Colo.App.1995).

[¶ 18] Lewis argues that the reasoning of *Williams v. Lee,* 33 F.3d 1010 (8th Cir.1994) supports his position that the suspension of parole supervision time is violative of the prohibition against ex post facto laws. *See Beebe v. Phelps,* 650 F.2d 774 (5th Cir.1981) (which held that the forfeiting or revocation of good time credits as being an ex post facto law).

[¶ 19] The Eighth Circuit Court of Appeals found Williams' good time credits had been forfeited by subsequent legislation (SDCL 24–15–24) and such forfeiture was constitutionally in violation of ex post facto clause. However, Lewis' reliance under these circumstances is misplaced. The Circuit Court of Appeals in *Williams* stated that, "[h]aving determined that the state could not constitutionally revoke Williams' good time credits, we conclude that, regardless of whether the tolling provision was ex post facto as applied to Williams (an issue we need not and do not reach)." *Williams,* 33 F.3d at 1014 (8th Cir. 1994).

[¶ 20] The statutes that create good time enumerate certain criteria which must be met in order for inmates to be entitled to good time. SDCL 24–5–1. The right to a reduction for good conduct is absolute and cannot be granted or taken away arbitrarily. *See South Dakota v. Weekley,* 90 S.D. 192, 240 N.W.2d 80 (1976).

[¶ 21] The United States Supreme Court has ruled that due process of law attaches to good time credit that an inmate earns pursuant to state law, and that certain minimal due process procedures must be followed before good time may be revoked. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Legislation affecting the revocation or forfeiture of good time credits can be void due to violations of ex post facto law and the right to minimal due process procedures. *See Weekley,* 90 S.D. 192, 240 N.W.2d 80.

[¶ 22] In addressing the first element of the ex post facto clauses of the state and federal constitutions, the "critical question is whether the law changes the legal consequences of acts completed before its effective date." *Weaver,* 450 U.S. at 31, 101 S.Ct. at 966, 67 L.Ed.2d at 24. For example in *Weaver,* the Supreme Court held unconstitutional a Florida statute that automatically reduced the amount of "gain time" [1] for good

---

1. "Gain time" refers to time credited to decrease an inmate's prison term "for meritorious conduct or exceptional industry." *Weaver,* 450 U.S. at 25 n. 1, 101 S.Ct. at 962 n. 1, 67 L.Ed.2d at 21 n. 1.

conduct and obedience to prison rules that could be deducted in the calculation of an inmate's sentence, because the self operative statute was applied to prisoners who had been convicted for acts committed before the statute's effective date, i.e., the original felony convictions. The Supreme Court held that the application of the Florida statute was retrospective in the ex post facto sense because it substantially altered the consequences attached, not to conduct occurring after the law's effective date, but rather to criminal activities completed. 450 U.S. at 31, 101 S.Ct. at 965–66, 67 L.Ed.2d at 24.

[¶ 23] While it is settled that criminal or penal legislation amending existing law may not change the legal consequences of acts completed before its effective date, a statute, however, is not rendered unconstitutional as an ex post facto law merely because it might operate on a fact or status preexisting the effective date of the legislation, as long as its punitive features apply only to acts committed after the statutory proscription becomes effective. *In re Ramirez*, 39 Cal.3d 931, 218 Cal.Rptr. 324, 705 P.2d 897 (1985); *People v. Billips*, 652 P.2d 1060 (Colo.1982); *Gasper v. Gunter*, 851 P.2d 912 (Colo.1993). In *Billips*, the defendant challenged a statute which provided that, for purposes of classifying the crime of escape from incarceration, persons in confinement for previously nonclassified felonies were deemed to have been convicted of a Class 5 felony. The statute was held to be retrospective and thus violated the federal and state prohibitions against ex post facto legislation. The Supreme Court of Colorado held that because the contested statutory provision gave notice to the defendant and others who commenced service of a sentence for a felony conviction prior to the statute's effective date and further because the defendant's escape took place ... well after the effective date of the challenged statute, no retrospective application is involved. *Billips*, 652 P.2d at 1065.

[¶ 24] Sentence enhancement statutes have long withstood ex post facto clause challenges. *See Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) (use of prior felony conviction as basis for habitual criminal adjudication does not violate ex post facto clause, even though the conviction occurred prior to passage of habitual criminal act); *McDonald v. Massachusetts*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901) (habitual criminal statute imposes a punishment on none but future crimes and therefore is not ex post facto;) *United States v. Leonard*, 868 F.2d 1393 (5th Cir.1989) (statute which based enhancement of defendant's sentence upon convictions proceeding its enactment held not retrospective).

[¶ 25] In the context of ex post facto challenges to criminal or penal statutes, we have followed *Weaver* (holding that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it); *In re Williams*, 488 N.W.2d 667 (S.D.1992); *Stumes*, 508 N.W.2d 366.

[¶ 26] Relying on *Williams, supra*, petitioner contends that the 1986 amendments relate to the original offense and not to the new crime committed in Colorado. While it is true that the 1986 amendment to SDCL 24–15–21 applies to petitioner only because he is a parolee and that he is a parolee because of an act committed before the 1986 amendment to SDCL 24–15–21, the suspension of parole supervision time is imposed solely because of the new crimes which the petitioner was sentenced to in the State of Colorado occurring after the 1986 amendment to SDCL 24–15–21. In other words the 1986 amendment to SDCL 24–15–21 applies only to events occurring after their enactment. If any aspect of petitioner's life is unconnected to petitioner's original crime, it would seem that crimes he committed in the State of Colorado after he was paroled would be unconnected. Accordingly, the 1986 amendment to SDCL 24–15–21 which suspended the parole supervision time after a warrant of arrest is issued does not relate to petitioner's original crime and is not retrospective under *Weaver* or *Stumes, supra*.

[¶ 27] The amendment to the SDCL 24–15–24 addressing the tolling of parole supervision time was in effect on July 1, 1986. Lewis violated his probation on February 27,

1987, and his parole on May 20, 1993, (Colorado conviction) for which a warrant of arrest was issued on June 15, 1993. Thus Lewis had "fair warning" of the consequences of violating the conditions of his probation which were triggered by Lewis' acts which were committed after the statute became effective.

[¶ 28] We conclude that the 1986 amendment SDCL 24–15–21 is not retrospective and therefore does not violate the ex post facto clauses.[2]

[¶ 29] We have already ruled that granting credit to a parolee for time served in another jurisdiction is within the Board of Pardons and Paroles' discretion. *Bush v. Canary*, 286 N.W.2d 536 (S.D.1979). Parolees have no constitutional right to receive concurrent sentences. *See Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).

[¶ 30] Neither has South Dakota, by statute or otherwise, conferred such a right upon parolees.

[¶ 31] In *State v. Moliga*, 113 Idaho 672, 747 P.2d 81 (1987) the court held that the defendant had no constitutional right to serve his sentences for Washington crimes and Idaho crimes concurrently. *See State v. Teal*, 105 Idaho 501, 670 P.2d 908 (1983); *In re Rojas*, 23 Cal.3d 152, 151 Cal.Rptr. 649, 588 P.2d 789 (1979); *Woodson v. State*, 178 Ind.App. 692, 383 N.E.2d 1096 (1978) all reaching a similar result.

[¶ 32] The Board of Pardons and Paroles has the authority to grant the petitioner a retroactive credit for the time served in Colorado and may even decide not to revoke petitioner's parole notwithstanding the Colorado conviction, and the Board's decision is purely discretionary. *Bush* at 539.

[¶ 33] The judgment of the circuit court denying the writ of habeas corpus is hereby affirmed.[3] Accordingly, Lewis is not entitled to a writ of habeas corpus.

[¶ 34] AMUNDSON and GILBERTSON, JJ., concur.

[¶ 35] MILLER, C.J., concurs specially.

[¶ 36] SABERS, J., dissents.

[¶ 37] MOSES, Circuit Judge, for KONENKAMP, J., disqualified.

MILLER, Chief Justice (concurring specially).

[¶ 38] I write specially to emphasize the distinction between the issue presented by this appeal and the Eighth Circuit Court of Appeals' holding in *Williams v. Lee*, 33 F.3d 1010, 1014 (8th Cir.1994), *cert. denied*, 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) (*Williams II*), and our subsequent summary reversal in *High Elk v. Class*, # 18870.[4] *Williams II* held that the application of SDCL 24–15–24 to reduce good-time credits constituted an ex post facto violation when applied to Williams' 1981 conviction. 33 F.3d at 1014. The Eighth Circuit limited its holding to the application of SDCL 24–15–24 and expressly declined to consider whether SDCL 24–15–21 was applied ex post facto. *Id.*

[¶ 39] In the instant case, Lewis appeals the application of SDCL 24–15–21 to toll his parole supervision time. Reduction of good-time credits and tolling parole supervision time are two distinct legal concepts, governed by two different statutes. Good-time credits affect the duration of an inmate's sentence. SDCL 24–5–1. Parole supervi-

---

**2.** This is the same holding as in *Williams*, 488 N.W.2d 667. In that case SDCL 24–15–21 was enacted before the time that Williams was convicted of passing fraudulent checks in South Carolina. Thus the 1986 statute was not being applied to conduct which occurred before its enactment, and we held that was no retrospective application and accordingly no valid ex post facto objection.

**3.** Although the trial court may have denied the writ for wrong reason, we will not overturn a right result even though it is based on wrong reason. *See Seymour v. Western Dakota Voc. Tech. Institute*, 419 N.W.2d 206 (S.D.1988), *Estate of Quinn*, 450 N.W.2d 432 (S.D.1990).

**4.** We summarily ordered that the application of SDCL 24–15–24 to reduce High Elk's good-time credits be reversed because its application to his 1989 rape conviction was ex post facto under the analysis and holding in *Williams v. Lee*, 33 F.3d 1010, 1014 (8th Cir.1994). *High Elk v. Class*, # 18870.

sion time affects the conditions under which an inmate's sentence is served. SDCL 24–15–1.1. Because this appeal concerns the applicability of SDCL 24–15–21, not SDCL 24–15–24, *Williams II* is distinguishable and not controlling.

SABERS, Justice (dissenting).

[¶ 40] I dissent. This court *is* bound by the Eighth Circuit Court of Appeals decision in *Williams v. Lee*, 33 F.3d 1010 (8th Cir. 1994), *cert. denied*, 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) (*Williams II*). *See* our July 11, 1995 "Order Directing Issuance of Judgment of Reversal" in High Elk v. Class, # 18870, which provides in relevant part:

> [High Elk's appeal] is meritorious on the following grounds: 1. that the issues on appeal are *clearly controlled* by settled South Dakota law or federal law binding upon the states, *Williams v. Lee*, 33 F.3d 1010 (8th Cir.1994), *cert. denied*, 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995).

(Emphasis added; a copy of the order is attached to this dissent).

[¶ 41] Even though this order is not binding precedent in unrelated litigation under SDCL 15–26A–87.1(E), is it not binding on us? By acknowledging that this court is bound by the Eighth Circuit opinion, we impliedly abandoned and rejected our prior decision in *In re Williams*, 488 N.W.2d 667 (S.D.1992) (*Williams I*), and the majority opinion's reliance on that case is misplaced. Even if our order were not binding on us, what has changed since July 11, 1995 that would lead us to a different conclusion? Absolutely nothing. We should reverse.

[¶ 42] This situation does not differ significantly from *Williams II* or *High Elk*. In *Williams II*, the Eighth Circuit stated:

> Because the law Williams challenges increases his punishment, it is being applied to his detriment. It also is being applied retroactively, because the law extends the term Williams must serve on his South Dakota rape conviction, and does not constitute a punishment for his South Carolina fraudulent check offense (South Carolina already has punished Williams for that offense).

33 F.3d at 1013 (footnote omitted). Likewise, in this case:

> Because the law Lewis challenges increases his punishment, it is being applied to his detriment. It also is being applied retroactively, because the law extends the term Lewis must serve on his South Dakota assault and burglary conviction, and does not constitute a punishment for his Colorado offense, for which Colorado has already punished Lewis.

[¶ 43] Even if we were to conclude that we were not bound by *Williams II* and *High Elk*, it is an absolute tenet of constitutional law that the states are bound [5] by the United States Supreme Court's interpretation of the

---

5. "That the states are bound" by United States Supreme Court constitutional interpretations is best stated in *Cooper v. Aaron*, 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 5, 16–17 (1958):

> Article VI of the Constitution makes the Constitution the "supreme Law of the Land." In 1803, Chief Justice Marshall, speaking for a unanimous Court, referring to the Constitution as "the fundamental and paramount law of the nation," declared in the notable case of *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60, that "It is emphatically the province and duty of the judicial department to say what the law is." This decision declared the basic principle that the federal judiciary is supreme in the exposition of the law of the constitution, and that principle has ever since been respected by this Court and the Country as a permanent and indispensable feature of our constitutional system. It follows that the interpretation of the Fourteenth Amendment enunciated by this Court ... is the supreme

law of the land, and Art. VI of the Constitution makes it of binding effect on the States "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Every state legislator and executive and judicial officer is solemnly committed by oath taken pursuant to Art. VI, cl. 3, "to support this Constitution." [...]

> No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it. Chief Justice Marshall spoke for a unanimous Court in saying that: "If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution becomes a solemn mockery...." *United States v. Peters*, 5 Cranch 115, 136, 3 L.Ed. 53.

Obviously, this mandate applies with equal force to all state courts, including this court.

United States Constitution. *See Cooper v. Aaron,* 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 5, 16–17 (1958). The provisions of the Constitution, including the ex post facto clause, can only have one meaning. This court is bound to respect and enforce the United States Supreme Court's decisions regarding that constitutional provision. *Id.*

[¶ 44] The relevant date is the date of the offense, not the parole release date or the date of later parole violations. By focusing on the wrong date, the majority opinion misapplies the test set out by the United States Supreme Court in *Weaver v. Graham,* 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17, 24 (1981):

> This argument fails to acknowledge that it is the effect, not the form, of the law that determines whether it is ex post facto. The critical question is whether the law changes the legal consequences of acts completed before its effective date. In the context of this case, this question can be recast as asking whether [the statute] applies to prisoners convicted for acts committed before the provision's effective date. Clearly, the answer is in the affirmative.... Thus, the provision attaches legal consequences to a crime committed before the law took effect.

*See also Williams II,* 33 F.3d at 1013:

> "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Thus, notice is relevant when the prisoner commits his criminal acts, not when he is paroled.*

(Quoting *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24 (emphasis added; original emphasis omitted)). In reaching its decision in *Williams II,* the Eighth Circuit relied in part on *Greenfield v. Scafati,* 277 F.Supp. 644 (D.Mass.1967) (three-judge court), *aff'd mem.,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), noting:

> The [*Greenfield*] court held the law to be ex post facto, reasoning that the law applied to the punishment that had been imposed on the prisoner as a result of his *initial offense,* and thus was retroactive, and that the law disadvantaged him because it operated to increase the time he ultimately would be required to spend in prison.

*Williams II,* 33 F.3d at 1012 (emphasis added).

[¶ 45] The majority opinion attempts to distinguish *Williams II* by emphasizing that the Eighth Circuit did not expressly reach the ex post facto question with regard to SDCL 24–15–21. This is not the issue. The issue is not *which* statute is being analyzed. The issue *is* the effect that *any* statute, enacted after the offense was committed, has on the inmate's sentence. *See, e.g., Lynce v. Mathis,* 519 U.S. ——, ——, 117 S.Ct. 891, 896, 137 L.Ed.2d 63, 73 (1997) (noting that retroactive effect of statute is considered without regard to the purpose behind its enactment).

[¶ 46] The criminal charges for which Lewis was confined to the penitentiary relate back to the crimes for which he received his September 27, 1985 suspended imposition of sentence. When he violated his probation and was sent to prison, it was for his original offenses, not for the probation violation. The United States Supreme Court recently explained that the ex post facto clause maintains the status quo between the State and a criminal defendant *from the time of the criminal offense.* *See Lynce,* 519 U.S. at ——, 117 S.Ct. at 895, 137 L.Ed.2d at 71:

> The specific prohibition on ex post facto laws is only one aspect of the broader constitutional protection against arbitrary changes in the law. In both the civil and the criminal context, the Constitution places limits on the sovereign's ability to use its law-making power to modify bargains it has made with its subjects. The basic principle is one that protects not only the rich and the powerful, but also the indigent defendant engaged in negotiations that may lead to an acknowledgment of guilt and a suitable punishment.

(Citation omitted). The terms of the bargain between the State and a defendant are written in those statutes in effect at the time of the offense. *Id.* at —— n. 12, 117 S.Ct. at

895 n. 12, 137 L.Ed.2d at 71 n. 12 ("The Ex Post Facto Clause flatly prohibits retroactive application of penal legislation."); *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (unanimous decision concluding that a revision in sentencing guidelines enacted between date of offense and date of conviction violated the ex post facto clause); *see also Brim v. South Dakota Bd. of Pardons & Paroles*, 1997 SD 48, ¶ 31, 563 N.W.2d 812, 819 (Sabers, J., dissenting; Amundson, J., joining) (stating that the statutory provisions relating to parole are "incorporated into the sentence by virtue of law, and become a part of it as much as if the provisions were actually written into it." quoting *People v. Joyce*, 246 Ill. 124, 92 N.E. 607, 613 (1910)). Therefore, the majority's statement in ¶ 27 that Lewis had "fair warning" is incorrect and clearly contrary to existing United States Supreme Court precedent.[6]

[¶ 47] SDCL 24–15–21 was not amended until after Lewis committed his crime. Therefore, the State had no authority to toll Lewis' sentence. In *Lynce*, Florida argued that the grant of "overcrowding gain time"[7] was not part of the original sentence. In rejecting that argument, the Court stated:

> [T]his argument is foreclosed by our precedents. As we recognized in *Weaver*, retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the Ex Post Facto Clause because ... [the] effective sentence is altered once this determinant [of petitioner's prison term] is changed.

519 U.S. at ——, 117 S.Ct. at 898, 137 L.Ed.2d at 75 (quoting *Weaver, supra*).

[¶ 48] Under the second part of the ex post facto analysis, the question is whether Lewis is disadvantaged by the retroactive application of a statute. *Delano v. Petteys*, 520 N.W.2d 606, 608 (S.D.1994) (citations omitted). Clearly, this can be answered in the affirmative; it is "punishment beyond what was prescribed when the crime was committed" to imprison Lewis for sixteen months more than prescribed by his original sentence. *Weaver*, 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24.

[¶ 49] It is within the Board of Pardons and Parole's discretion to release an inmate on parole. Once an inmate is paroled, he remains "an inmate under the legal custody of the Department of Corrections until the expiration of his term of imprisonment." SDCL 24–15–1.1. In fact, a parolee "shall at all times be considered confined[.]" SDCL 24–15–13. In other words, the clock is still running, and the inmate/parolee is still serving his sentence. The Legislature realized there was a problem and amended SDCL 24–15–21 to prevent a parolee from violating parole and evading re-incarceration while his sentence ran out. While this was a valid concern and SDCL 24–15–21 an effective, necessary law, it *can not* be applied to inmates whose crimes were committed before July 1, 1986 without violating the ex post facto clause.[8] *Lynce*, 519 U.S. at ——,

---

**6.** The cases upon which the majority relies in ¶ 24 are distinguishable from this case. *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) and *McDonald v. Massachusetts*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901) both concerned whether habitual offender statutes violated the ex post facto clause. The Court held that they did not apply retroactively to convictions occurring before the statutes' enactment. "The [enhanced] sentence ... is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger*, 334 U.S. at 732, 68 S.Ct. at 1258, 92 L.Ed. at 1687 (citations omitted).

**7.** To alleviate serious prison overcrowding, Florida generously awarded early-release credits, known as "gain time" credits to most inmates. The statute authorizing gain time was enacted in 1983; Lynce was sentenced in 1986. At issue in *Lynce* was subsequent legislation expanding the list of offenders ineligible for the credits. Shortly thereafter, the Florida Attorney General issued an opinion interpreting the legislation as retroactively canceling all gain time credits awarded to inmates convicted of murder or attempted murder. The latter action resulted in the cancellation of credits and the re-arrest and re-incarceration of certain parolees, including Lynce. The Court held that this was a violation of the ex post facto clause and prevented Florida from rescinding Lynce's gain time.

**8.** This does not leave the State without a remedy in that it can prosecute a parolee for escape. *See* SDCL 22–11A–2:

> Any prisoner who escapes is guilty of a Class 4 felony. If such prisoner is under sentence of imprisonment, his sentence on conviction for

117 S.Ct. at 898, 137 L.Ed.2d at 72; *Miller*, 482 U.S. at 430–32, 107 S.Ct. at 2451–52, 96 L.Ed.2d at 359–61; *Weaver*, 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24; Greenfield, *supra*. As previously noted, the retroactive effect of the statute is analyzed without regard to the purpose behind its enactment.

[¶ 50] Despite the cursory treatment afforded *Weaver* by the majority opinion, and its failure to mention *Greenfield* or *Lynce*, these cases control our ex post facto analysis and no amount of citation to California and Colorado state law (*supra* ¶ 23) can overcome the dictates of the United States Supreme Court in this regard.

[¶ 51] In summary, SDCL 24–15–21, which was not enacted until 1986, can not be applied to Lewis without violating ex post facto constitutional provisions. "This court is to presume that the legislature's ... amendment was passed to change existing law[.]" *Petteys*, 520 N.W.2d at 609. Because the 1986 amendment is "more onerous than the prior law," it constitutes a violation of his rights under the ex post facto clause. *Id.* at 610 (citing *Dobbert v. Florida*, 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)).

an escape shall commence following the expiration of the term of the last sentence of his imprisonment.

*See also* SDCL 22–11A–1:

The term "prisoner" when used in this chapter, includes every person who is in custody by being under arrest or by being under process of law issued from a court of competent jurisdiction, whether civil or criminal. A prisoner at the time of his escape need not be in a place designated for the keeping of prisoners.

The term "escape" when used in this chapter includes departure without lawful authority or failure to return to custody following a temporary leave granted for a specific purpose or limited period.

A Class 4 felony is punishable by ten years imprisonment, and a fine of up to $10,000.00.

SDCL 22–6–1(6). As noted in SDCL 22–11A–2, the sentence must be served consecutively to the one in effect at the time of escape.

There is no statutory authority for the Board to "sentence" Lewis for his Colorado crimes. Therefore, the majority's statement that "the suspension of parole supervision time is imposed solely because of the new crimes which the petitioner was sentenced to in the State of Colorado" (*supra* ¶ 26) is made with no basis in law. The revocation of parole, like the revocation of probation, does not constitute a criminal prosecution. *State v. Murphy*, 506 N.W.2d 130, 132 (S.D.1993) (citing *State v. Burkman*, 281 N.W.2d 442 (S.D.1979)). Unless the State charges him with a new crime, the only authority it may exercise over an inmate/parolee relates back to the original offense for which he is incarcerated.