Willie **WILLIAMS, III, Appellee,**

v.

Steven W. **LEE, Warden, South Dakota State Penitentiary; Mark W. Barnett, Attorney General, State of South Dakota, Appellants.**

No. 93–3063.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1994.

Decided Aug. 31, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 20, 1994.

Todd Alan Love, Asst. Atty. Gen., Pierre, SD, argued (Frank Geaghan, Asst. Atty. Gen., on the brief), for appellant.

Douglas E. Hoffman, Sioux Falls, SD, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BOWMAN, Circuit Judge.

After Willie Williams, III, who currently is confined at the South Dakota State Penitentiary, violated his parole, the state of South Dakota, acting on the authority of legislation enacted after Williams had committed the offense that resulted in his conviction and sentence, revoked his accumulated good-time credits. The District Court[1] concluded that the state thereby had violated the *Ex Post Facto* Clause, and it granted Williams a writ of habeas corpus. The state appeals. We affirm.

I.

In December 1981, Williams pleaded guilty in a South Dakota state court to first-degree rape. *See Williams v. State,* 349 N.W.2d 58 (S.D.1984). He was sentenced to fifteen years. Despite the violent nature of his crime, Williams was placed on parole in December 1984 after a mere three years in prison. With credit for his good time, Williams's parole was to expire in October 1990.

In 1983, while Williams was still in prison in South Dakota, the state added a provision to its parole laws stating that, if a parolee violates the terms of his parole, the South Dakota Board of Pardons and Paroles (the Board) is "authorized to order the reduction of time in full or in part [that was granted] for good conduct." S.D.Codified Laws Ann. § 24–15–24 (1988). In the parole agreement Williams signed in connection with his release to parole status, he acknowledged he was aware that, were he to violate his parole, he could lose all of his good-time credits. In 1986, the state again added a provision to its laws, this time to provide that, "[u]pon issuance of [an arrest] warrant, the running of the parole supervision time shall be suspended until the board has entered its final order on the revocation." *Id.* § 24–15–21 (Supp. 1994).

After being placed on parole, Williams went to South Carolina, where in August 1987 he was convicted of writing a fraudulent check. For this crime South Carolina placed Williams on probation for one year and ordered him to make restitution. Back in South Dakota, the Board issued an arrest warrant for Williams when it learned in February 1988 of his fraudulent check conviction.

By the time the Board issued the arrest warrant, however, Williams was in jail once again, having been taken into custody in December 1987. The place again was South Carolina, the charge, this time, first-degree murder. In May 1988, Williams was convicted of the first-degree murder of Zenaida Albury. Williams's murder conviction was reversed in January 1991, however, and his case was remanded for a new trial. *State v. Williams,* 303 S.C. 274, 400 S.E.2d 131 (1991).

When South Dakota learned the next month, in February 1991, that Williams again was awaiting trial, it informed South Carolina that it had issued a warrant for Williams's arrest. When Williams posted bond in South Carolina, authorities there detained him pursuant to the South Dakota warrant and returned him to that state in April 1991, six months after Williams's parole originally was to have expired.

---

**1.** The Honorable John B. Jones, United States District Judge for the District of South Dakota.

Later that April the Board held a parole revocation hearing. Williams admitted at the hearing that he had been convicted of passing a fraudulent check. The Board concluded that Williams had violated the terms of his parole, and it revoked the parole and Williams's six years of good-time credit. Williams's new release date was to be in October 1996, upon the completion of his fifteen-year sentence on his South Dakota rape conviction.

Williams challenged the Board's actions in state court, claiming that the Board's application to him of the 1983 and 1986 statutory modifications each worked a violation of the *Ex Post Facto* Clause of the United States Constitution. U.S. Const. art. I, § 10, cl. 1. The state argued that Williams had notice that he could lose his good-time credits if he violated the terms of his parole, and that Williams's loss of his good-time credits, and the resulting extension of his sentence, were direct consequences of his parole violation and thus were based on conduct that occurred *after* the change to the state law was made. A similar argument was made by the state with respect to the 1986 tolling provision. The South Dakota Supreme Court ultimately agreed with the state's position and upheld the Board's actions. *In re Williams,* 488 N.W.2d 667 (S.D.1992).

Williams then filed his petition in the District Court for a writ of habeas corpus, raising the same *ex post facto* challenges. The court concluded that the application of each statutory provision to Williams violated the *ex post facto* prohibition and granted Williams's petition. The state appeals.

## II.

■■■ A state violates the *Ex Post Facto* Clause of the federal constitution if it attempts to punish as a crime an act that was not criminal when done, removes a defense available when the act was committed, or increases the punishment for a crime after it was committed. *Collins v. Youngblood,* 497 U.S. 37, 42–43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990). For a law to run afoul of this ban, "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (footnote omitted).

In *Greenfield v. Scafati,* 277 F.Supp. 644 (D.Mass.1967) (three-judge court), *aff'd mem.,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), the court considered whether a state violated the *ex post facto* ban when it applied to a prisoner a law passed after the prisoner had been incarcerated but before he had been paroled. The law at issue stated that, upon revocation of a prisoner's parole, the prisoner was not eligible to accumulate good-time credits during the first six months of his reincarceration. The court held the law to be *ex post facto,* reasoning that the law applied to the punishment that had been imposed on the prisoner as a result of his initial offense, and thus was retroactive, and that the law disadvantaged him because it operated to increase the time he ultimately would be required to spend in prison. The opinion of the three-judge district court was affirmed summarily by the Supreme Court.

The Fifth Circuit applied *Greenfield's* principles in *Beebe v. Phelps,* 650 F.2d 774 (5th Cir. Unit A July 1981) (per curiam), a case that presented facts virtually identical to those of the case before us—the law at issue, which had been enacted after the prisoner's conviction but before his parole, provided that he would forfeit a portion of his good-time credits were his parole revoked. The court held that the application of the law worked an *ex post facto* violation when applied to the prisoner because the offense for which the prisoner's parole had been revoked carried its own sentence, while the good-time forfeiture extended the time remaining to be served on the prisoner's original sentence. Other federal courts uniformly have followed *Greenfield. See, e.g., United States v. Paskow,* 11 F.3d 873 (9th Cir.1993); *Fender v. Thompson,* 883 F.2d 303 (4th Cir.1989).

As existing Supreme Court precedent, *Greenfield* dictates the result we reach today. Were it not for the 1983 statutory change allowing the Board to revoke Williams's good-time credits, Williams's sentence would have expired in October 1990. By operation

of the law at issue here, Williams would be required to remain in prison until October 1996. Because the law Williams challenges increases his punishment, it is being applied to his detriment.[2] It also is being applied retroactively, because the law extends the term Williams must serve on his South Dakota rape conviction, and does not constitute a punishment for his South Carolina fraudulent check offense (South Carolina already has punished Williams for that offense).

The state contends that *Greenfield* no longer is good law in light of *Weaver,* and that we should hold that the application of the 1983 revocation law to Williams was not *ex post facto* because Williams was on notice of the change and it was his actions after the enactment of the 1983 law that led to the revocation of his good-time credits. In *Weaver,* the Supreme Court invalidated as *ex post facto* Florida's change in its method for calculating good-time credits for all of its prisoners, a change that reduced the amount of good-time credits prisoners would receive. As the state points out, the *Weaver* Court explained that, "[c]ritical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint." *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965. Because the *Weaver* Court expressed concern about the prisoners' lack of notice, a concern not mentioned in *Greenfield,* the state concludes that adherence to *Greenfield* is not justified here, where Williams knew that if he violated the terms of his parole he could lose his good-time credits. We cannot agree.

First and foremost, in *Weaver* the Supreme Court held that *Greenfield* still is controlling authority. The majority opinion in *Weaver* discussed *Greenfield* and cited that case with approval. *Id.* at 34, 101 S.Ct. at 966. And in his opinion concurring in the judgment, Justice Blackmun, joined by Chief Justice Burger, explained that he joined the

judgment of the Court only because he felt bound to do so by *Greenfield* and *Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937). *Weaver,* 450 U.S. at 37, 101 S.Ct. at 968 (Blackmun, J., concurring in the judgment).

■ Second, the passage from *Weaver* quoted above actually is quite different when quoted in full: "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint *when the legislature increases punishment beyond what was prescribed when the crime was consummated.*" *Id.* at 30, 101 S.Ct. at 965 (emphasis added). Thus, notice is relevant when the prisoner commits his criminal acts, not when he is paroled. In addition, although the *Weaver* Court discussed the importance of notice, of which the plaintiff-prisoners in that case had had none, the decision in *Weaver* was based not on the notice issue, but on the statute's retroactive application to the disadvantage of the prisoners. *Id.* at 31–34, 101 S.Ct. at 965–66.

Finally, the notice argument does not apply in the *Greenfield* line of cases in the same manner as it did in *Weaver,* for in the former cases the parolees were on at least constructive notice as to the new consequences of a post-conviction violation, whereas in the latter case all prisoners—even if they did not commit a subsequent bad act—were affected by the new law. Other federal courts faced with *Greenfield*-type situations also have refused to accept the notice argument the state makes here. *See, e.g., Paskow,* 11 F.3d at 880 (noting that, to adopt the "notice" argument, a court "would be required to jettison twenty-five years of precedent"); *Fender,* 883 F.2d at 307 (holding that notice is irrelevant where "the challenged statute nevertheless accomplished an impermissible enhancement of the punishment for an earlier, unrelated crime"); *Beebe,* 650 F.2d at 776 (reject-

---

**2.** The state argues that, even before the 1983 statutory change, the Board was authorized to revoke a prisoner's good-time credits if the prisoner committed a parole violation. Therefore, it concludes, the statutory change cannot have disadvantaged Williams. *See Burnside v. White,* 760 F.2d 217 (8th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985). It is

uncontroverted, however, that at the time Williams committed the offense of conviction the Board lacked explicit statutory authority to revoke good-time credits, *see In re Williams,* 488 N.W.2d 667, 670 (S.D.1992), and the state has not made a persuasive showing that the Board otherwise had such authority at that time.

ing the argument that, because the prisoner had notice that he would forfeit a portion of his good time if his parole was revoked, the law was not *ex post facto* ).

Based on *Greenfield* and its progeny, we are constrained to hold that South Dakota's application to Williams of the good-time forfeiture provision violates the *Ex Post Facto* Clause. Having determined that the state could not constitutionally revoke Williams's good-time credits, we conclude that, regardless of whether the tolling provision was *ex post facto* as applied to Williams (an issue we need not and do not reach), Williams's sentence has expired.[3] Accordingly, Williams is entitled to a writ of habeas corpus.[4]

### III.

The judgment of the District Court granting Williams's petition for a writ of habeas corpus is affirmed. Subject to the resolution of any detainers that may be pending against Williams, he is to be released from the custody of the state of South Dakota.

---

**3.** When the state issued Williams's arrest warrant in February 1988, Williams had 32 months remaining on his sentence (which was to expire in October 1990). Since April 1991, when the state reincarcerated Williams after revoking his parole and good-time credits, more than 32 months have passed. Therefore, even assuming the tolling provision is valid as applied to Williams, he has served the time remaining on his sentence.

**4.** Williams also argues that his parole had expired by the time the Board attempted to revoke it, and thus in revoking his parole the Board deprived him of his rights under the Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. Our resolution of this case makes it unnecessary for us to reach these arguments.