1997 SD 76

**Chip A. WATKINS, Applicant
and Appellant,**

v.

**Joseph CLASS, Warden of the South
Dakota State Penitentiary,
Appellee.**

No. 19759.

Supreme Court of South Dakota.

Considered on Briefs March 26, 1997.

Decided June 25, 1997.

Thomas J. Penisten, Sioux Falls, for applicant and appellant.

Mark Barnett, Attorney General, Frank E. Geaghan, Assistant Attorney General, Pierre, for appellee.

MILLER, Chief Justice.

[¶ 1] Chip A. Watkins appeals the denial of his application for a writ of habeas corpus. We affirm.

## FACTS

[¶ 2] As a result of a criminal escapade in Clay County, South Dakota, in 1984, Watkins was charged with three counts of first-degree robbery (SDCL 22–30–1); one count each of first-degree burglary (SDCL 22–32–1); possession of a controlled weapon (SDCL 22–14–6); commission of a felony while armed with a short shotgun (SDCL 22–14–12); and possession of a firearm by a convicted felon (SDCL 22–14–5). Pursuant to a plea agreement, Watkins pleaded guilty to one count each of first-degree robbery and possession of a controlled weapon. On March 26, 1984, he was sentenced to ten years in the state penitentiary for the robbery conviction and two years for the possession of a controlled weapon conviction, both sentences to run concurrently. When Watkins entered the penitentiary, his good-time release date was calculated to be September 26, 1990, and his flat-time release date was set for March 26, 1994.

[¶ 3] Watkins was released on parole June 30, 1988. A warrant for his arrest was issued on September 20, 1988, and Watkins was returned to the penitentiary on September 21, 1988. The record is unclear as to how he violated his parole. The following day, the Board of Pardons and Paroles (hereinafter "the Board") revoked Watkins' parole and withheld one year and nine months of good-time credit as a result of the violation.

[¶ 4] Watkins was released on parole a second time on September 27, 1988.[1] As a condition of this parole, he was again required to sign a standard parole agreement requiring him to keep his parole officer informed of his whereabouts at all times. In addition to obeying all municipal, county, state, and federal laws, he was also required to keep the hours specified by his parole officer and secure advance approval for use of any vehicle as conditions of his parole.

[¶ 5] After being paroled, Watkins was involved in a physical confrontation with his roommate's friend. His roommate threatened to call the police and Watkins fled the state to avoid the possibility of parole revocation. On January 4, 1989, a warrant was issued for him as a parole absconder.[2] Watkins remained at large for more than five years, living in New Mexico under various aliases. On December 9, 1994, he was apprehended in Colorado and returned to South Dakota.

[¶ 6] Watkins waived his right to a preliminary hearing before the Board and a final hearing was held on January 26, 1995. At the hearing, he admitted to having failed to inform his parole agent of his whereabouts in violation of his parole agreement. Based on this admitted violation, on January 27, 1995, the Board revoked his parole and withheld seventeen months of good-time credit. The Board deemed the five years, ten months and nineteen days Watkins spent as an absconder as tolled "dead time," inapplicable to his sentence. The effect of the reduction in Watkins' good-time credit and the tolled "dead time" was to calculate his good-time release date as October 15, 1999, and set his flat-time release date as February 15, 2000.

[¶ 7] Watkins filed a writ of habeas corpus alleging that the State was without the authority to toll his parole supervision time.

---

1. The record does not indicate why Watkins was reparoled within a week after his arrest for his first parole violation.

2. Watkins' last documented contact with his parole officer was on December 23, 1988.

The habeas court denied Watkins' application. He appeals.

## STANDARD OF REVIEW

[¶ 8] Habeas corpus is not a substitute for direct review. *Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191 (citation omitted). A habeas corpus proceeding is in the nature of a collateral attack on a final judgment; accordingly, our review is limited. *Black v. Class,* 1997 SD 22, ¶ 4, 560 N.W.2d 544, 546; *Jenner v. Leapley,* 521 N.W.2d 422, 425 (S.D.1994); *Gregory v. Solem,* 449 N.W.2d 827, 829 (S.D.1989).

> Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction.

*St. Cloud v. Leapley,* 521 N.W.2d 118, 121 (S.D.1994) *(St. Cloud III)* (internal citations omitted). The petitioner has the burden to prove by a preponderance of the evidence that he is entitled to relief. *Two Eagle v. Leapley,* 522 N.W.2d 765, 768 (S.D.1994); *Petrilli v. Leapley,* 491 N.W.2d 79, 81 (S.D. 1992).

## DECISION

[¶ 9] Initially, we note the habeas court concluded the Board's authority to toll parole supervision time was granted by SDCL 24–15–24,[3] and concluded "[w]hile SDCL 24–15–21 (1986) and its later versions aid in statutory clarification when a parole absconder situation arises, SDCL 24–15–24 (1983) is nonetheless effective against parole absconders in limiting good credits received while on the run." SDCL 24–15–24 sets forth the remedies available to the Board for addressing parole violations, including parole revocation,

reinstatement of the original sentence or reduction of good-time credit, in part or in whole. SDCL 24–15–21, on the other hand, provides for the tolling of parole supervision time during the period between the issuance of a warrant for a parole violation and parole revocation.

[¶ 10] The habeas court's application of SDCL 24–15–24 as authority to reduce Watkins' good-time credits was proper. The application of SDCL 24–15–24 to toll Watkins' parole supervision time, however, was in error because the statute authorizes only post-violation remedies for a parole violation. SDCL 24–15–21, not SDCL 24–15–24, provides the correct framework for determining whether parole supervision time is tolled upon issuance of a warrant and applies to the "dead time" at issue in Watkins' application for a writ of habeas.

**Whether the Board's application of SDCL 24–15–21 to toll the running of Watkins' sentence violated the ex post facto clause.**

[¶ 11] Though for the wrong reason, the habeas court's denial of Watkins' writ of habeas corpus reached the right result for the reasons stated below. *See Kehn v. Hoeksema,* 524 N.W.2d 879, 881 (S.D.1994); *Sommervold v. Grevlos,* 518 N.W.2d 733, 740 (S.D.1994); *Cowell v. Leapley,* 458 N.W.2d 514, 519 (S.D.1990).

[¶ 12] The United States Constitution expressly provides "no state shall . . . pass . . . any ex post facto law." U.S.Const.Art. I, § 10. Similarly, the South Dakota Constitution provides "no ex post facto law . . . shall be passed." S.D.Const.Art. VI, § 12. The ex post facto clause is implicated only by a criminal or penal statute which "imposes a punishment for an act which was not punishable at the time it was committed or [which imposes] an additional punishment to that then prescribed." *Collins v. Youngblood,* 497

---

**3.** SDCL 24–15–24 provides:
If the board of pardons and paroles is satisfied that any provision of § 24–15–20 has been violated, it may revoke the parole and reinstate the terms of the original sentence and conviction or it may modify conditions of parole and restore parole status. In addition, the board is

authorized to order the reduction of time in full or in part for good conduct granted under § 24–5–1. If the board does not find that the provisions of § 24–15–20 have been violated, it may restore the parolee to the original or modified terms and conditions of his parole.

U.S. 37, 45–46, 110 S.Ct. 2715, 2721, 111 L.Ed.2d 30, 41 (1990).

[¶ 13] Two elements are required for a finding that a statute is ex post facto: "[I]t must be retrospective, that is it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981) (footnotes omitted). *See also Delano v. Petteys,* 520 N.W.2d 606, 608 (S.D.1994); *Stumes v. Delano,* 508 N.W.2d 366, 371 (S.D.1993); *Matter of Williams,* 488 N.W.2d 667, 669–70 (S.D.1992) (*Williams I* ).

[¶ 14] The State and Watkins do not dispute that the Board's authority to toll parole supervision time is derived from SDCL 24–15–21, which, as amended in 1986, provides:

If the executive director of the board is satisfied that any provision of § 24–15–20 has been violated, the executive director may issue a warrant to the Department of Corrections, any law enforcement officer, or any parole agent, directing that the parolee named be arrested. Pursuant to the provisions of § 24–15–23, the parolee may be returned to the state penitentiary. Upon the issuance of the warrant, the running of the parole supervision time shall be suspended until the board has entered its final order on the revocation. The board shall credit the inmate with time spent in custody as a direct result of the parole violation.

The version of this statute in effect when Watkins was convicted did not contain the language mandating the tolling of parole supervision time upon the issuance of a parole violation warrant. The tolling language was in effect, however, when Watkins was paroled in 1988. Watkins maintains the 1986 amendment is inapplicable to his parole violation because the amendment was not in effect when he was convicted in 1984. State argues the 1986 tolling provision is applicable because it was in effect at the time of the 1989 parole violation.

[¶ 15] Watkins argues the Eighth Circuit Court of Appeals' review of our holding in *Williams I* supports his argument that the application of SDCL 24–15–21 constituted an ex post facto application. *Williams v. Lee,* 33 F.3d 1010, 1014 (8th Cir.1994) *cert. denied* 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) (*Williams II* ). The Eighth Circuit concluded the revocation of Williams' good-time credits pursuant to a statutory amendment to SDCL 24–15–24 enacted two years after his conviction was an ex post facto application of the amendment. *Id.* The Eighth Circuit's decision, however, expressly declined to reach the issue of ex post facto application of SDCL 24–15–21. *Id.* (stating "we need not and do not reach" the issue of whether the tolling provision was ex post facto). We conclude *Williams II* is not determinative of the applicability of SDCL 24–15–21 to Watkins' appeal.

[¶ 16] Watkins' parole supervision time was suspended as a direct result of events which occurred after the 1986 amendment to SDCL 24–15–21. Watkins' 1989 parole violation, *not his 1984 convictions,* triggered the tolling provisions of the statute. An amended statute is not ex post facto merely because it might operate on a fact preexisting the amendment, so long as the punitive aspects of the amendment apply only to events occurring after the amendment's enactment. *In re Ramirez,* 39 Cal.3d 931, 218 Cal.Rptr. 324, 328–29, 705 P.2d 897, 901 (1985); *Gasper v. Gunter,* 851 P.2d 912, 918 (Colo.1993); *People v. Billips,* 652 P.2d 1060, 1064 (Colo.1982). While Watkins' status as a parolee resulted from his 1984 convictions, this did not automatically make the application of the 1986 amendment ex post facto. The 1989 parole violation was a separate and distinct event unconnected to the convictions for which Watkins was originally sentenced. The amendment to SDCL 24–15–21 related only to the parole violation, not his original convictions. The tolling provision of SDCL 24–15–21 was not applied retroactively.

[¶ 17] Furthermore, Watkins was not disadvantaged by the 1986 amendment application, even assuming it was retroactive. *See Weaver,* 450 U.S. at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23. A critical distinction exists between the statute challenged in *Williams*

*II* and the statute challenged by Watkins;[4] SDCL 24–15–24 affects an inmate's statutory right to a sentence reduction for good conduct and SDCL 24–15–21 affects an inmate's discretionary privilege of parole. The statutory right to a reduction for good conduct is absolute and cannot be taken away arbitrarily. *Lewis v. Class,* 1997 SD 67, ¶ 20, 565 N.W.2d 61, 64; *South Dakota v. Weekley,* 90 S.D. 192, 240 N.W.2d 80, 83 (1976). When an inmate enters the penitentiary, he has an expectation of a reduced sentence based on good-time credits. *See* SDCL 24–5–1. Good-time credits actually reduce the term of an inmate's sentence. *Id.* Substantial alterations to this expectation through subsequent legislative enactments violate the ex post facto clause. *Lynce v. Mathis,* 519 U.S. ——, ——, 117 S.Ct. 891, 899, 137 L.Ed.2d 63, 76–77 (1997).

[¶ 18] Parole is a discretionary conditional release and an inmate is never entitled to the privilege of parole. SDCL 24–15–1.1. While an inmate may be entitled to the calculation of a parole eligibility date, SDCL 24–15–3, he is never entitled to a grant of parole. SDCL 24–15–1.1. Parole may only be granted when it would be in the best interests of society and the inmate. *Id.* An inmate granted parole remains under the legal custody of the Department of Corrections until the expiration of his sentence. SDCL 24–15–1.1. Parole does not act to reduce an inmate's sentence but rather only to change the place and conditions of the inmate's custody.

[¶ 19] In *Williams II,* the Eighth Circuit concluded that because the revocation of Williams good-time credits extended the time he must serve on his rape conviction, the post-conviction amendment to SDCL 24–15–24 increased his punishment and constituted an ex post facto application. Watkins' sentence, however, was not increased as a result of the post-conviction amendment to SDCL 24–15–21, but rather tolled until he was returned to the legal custody of the Department of Corrections to actually serve the term of his sentence. The fact that Watkins unilaterally chose to flee from law enforcement and remain a fugitive for nearly six years does not reduce the time he was required to be under the Department's custody. During his absence, Watkins was not fulfilling the terms and conditions of his parole and, therefore, he was not serving his sentence. Tolling his parole supervision period during this period of noncompliance with the conditions of his parole delayed, but did not lengthen, Watkins' sentence to his detriment. He has not been disadvantaged by the tolling of his parole supervision time and accordingly he has no ex post facto objection.

[¶ 20] We have reviewed Watkins' second argument that the revocation of his parole after the expiration of his sentence violated the Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments to the United States Constitution and find it to be without merit.

[¶ 21] Affirmed.

[¶ 22] KONENKAMP and GILBERTSON, JJ., concur.

[¶ 23] SABERS and AMUNDSON, JJ., dissent.

SABERS, Justice (dissenting).

[¶ 24] The conference opinion incorrectly states:

> The 1989 parole violation was a separate and distinct event unconnected to the convictions for which Watkins was originally sentenced. The amendment to SDCL 24–15–21 related only to the parole violation, not his original convictions. The tolling provision of SDCL 24–15–21 was not applied retroactively.

> *Williams v. Lee,* 33 F.3d 1010 (8thCir.1994), *cert. denied,* [—— U.S. ——] 115 S.Ct. 1393, 131 L.Ed.2d 244 (U.S.1995).

> *High Elk,* like *Williams,* appealed the reduction of good-time credits pursuant to an amendment to SDCL 24–15–24. The issue presented by Watkins is distinguishable from *High Elk* for the same reasons *Williams II* is distinguishable.

---

4. Watkins also relies on our summary reversal in *High Elk v. Class,* 538 N.W.2d 248, following the Eighth Circuit's ruling in *Williams II,* in which we stated:

   > [*High Elk*'s appeal] is meritorious on the following grounds: 1. that the issues on appeal are clearly controlled by settled South Dakota law or federal law binding upon the states,

*Supra* ¶ 16. The conference opinion focuses on the wrong date and consequently misapplies the test set out by the United States Supreme Court in *Weaver v. Graham,* 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17, 24 (1981):

> This argument fails to acknowledge that it is the effect, not the form, of the law that determines whether it is ex post facto. The critical question is whether the law changes the legal consequences of acts completed before its effective date. In the context of this case, this question can be recast as asking whether [the statute] applies to prisoners convicted for acts committed before the provision's effective date. Clearly, the answer is in the affirmative.... Thus, the provision attaches legal consequences to a crime committed before the law took effect.

The relevant date is the date of the offense, not the parole release date or the date of later parole violations:

> "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Thus, notice is relevant when the prisoner commits his criminal acts, not when he is paroled.*

*Williams v. Lee,* 33 F.3d 1010, 1013 (8thCir.1994), *cert. denied,* 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995) (*Williams II* ) (quoting *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24 (emphasis added; original emphasis omitted)). In reaching its decision in *Williams II,* the Eighth Circuit relied in part on *Greenfield v. Scafati,* 277 F.Supp. 644 (D.Mass.1967) (three-judge court), *aff'd mem.,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), noting:

> The [*Greenfield* ] court held the law to be ex post facto, reasoning that the law applied to the punishment that had been imposed on the prisoner as a result of his *initial offense,* and thus was retroactive, and that the law disadvantaged him because it operated to increase the time he ultimately would be required to spend in prison.

*Williams II,* 33 F.3d at 1012 (emphasis added).

[¶ 25] The conference opinion attempts to distinguish *Williams II,* 33 F.3d at 1013, by emphasizing that the Eighth Circuit did not expressly reach the ex post facto question with regard to SDCL 24–15–21. This is not the issue. The issue is not *which* statute is being analyzed. The issue *is* the effect that *any* statute, enacted after the offense was committed, has on the inmate's sentence. *See, e.g., Lynce v. Mathis,* 519 U.S. ——, —— – ——, 117 S.Ct. 891, 895–96, 137 L.Ed.2d 63, 71–72 (1997) (noting that retroactive effect of statute is considered without regard to the purpose behind its enactment).

[¶ 26] Furthermore, we previously determined that we *are* bound by the holding in *Williams II. See* our July 11, 1995 "Order Directing Issuance of Judgment of Reversal" in *High Elk v. Class,* 538 N.W.2d 248, which provides in relevant part:

> [*High Elk*'s appeal] is meritorious on the following grounds: 1. that the issues on appeal are *clearly controlled* by settled South Dakota law or federal law binding upon the states, *Williams v. Lee,* 33 F.3d 1010 (8thCir.1994), *cert. denied,* [514 U.S. 1032] 115 S.Ct. 1393, 131 L.Ed.2d 244 (U.S. 1995).

(Emphasis added; a copy of the order is attached to this dissent). Even though this order is not binding precedent in unrelated litigation under SDCL 15–26A–87.1, is it not binding on us? Even if our order were not binding on us, what has changed since July 11, 1995 that would lead us to a different conclusion? Absolutely nothing. We should reverse.

[¶ 27] The United States Supreme Court recently explained that the ex post facto clause maintains the status quo between the State and a criminal defendant *from the time of the criminal offense. See Lynce,* 519 U.S. at ——, 117 S.Ct. at 895, 137 L.Ed.2d at 71:

> The specific prohibition on ex post facto laws is only one aspect of the broader constitutional protection against arbitrary changes in the law. In both the civil and the criminal context, the Constitution places limits on the sovereign's ability to

use its law-making power to modify bargains it has made with its subjects. The basic principle is one that protects not only the rich and the powerful, but also the indigent defendant engaged in negotiations that may lead to an acknowledgment of guilt and a suitable punishment.

(Citation omitted). The terms of the bargain between the State and a defendant are written in those statutes in effect at the time of the offense. *Id.* at —— n. 12, 117 S.Ct. at 895 n. 12, 137 L.Ed.2d at 71 n. 12 ("The Ex Post Facto Clause flatly prohibits retroactive application of penal legislation."); *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (unanimous decision concluding that a revision in sentencing guidelines enacted between date of offense and date of conviction violated the ex post facto clause); *see also Brim v. South Dakota Bd. of Pardons & Paroles,* 1997 SD 48, ¶ 31, 563 N.W.2d 812, 819 (Sabers, J., dissenting; Amundson, J., joining) (stating that the statutory provisions relating to parole are "incorporated into the sentence by virtue of law, and become a part of it as much as if the provisions were actually written into it.") (quoting *People v. Joyce,* 246 Ill. 124, 92 N.E. 607, 613 (1910)).

[¶ 28] SDCL 24–15–21 was not amended until nearly two and a half years after Watkins committed his crime. Therefore, the State had no authority to toll Watkins' sentence. In *Lynce,* Florida argued that the grant of "overcrowding gain time"[5] was not part of the original sentence. In rejecting that argument, the Court stated:

[T]his argument is foreclosed by our precedents. As we recognized in *Weaver,* retroactive alteration of parole or early release provisions, like the retroactive application

of provisions that govern initial sentencing, implicates the Ex Post Facto Clause because ... [the] effective sentence is altered once this determinant [of petitioner's prison term] is changed.

519 U.S. at ——, 117 S.Ct. at 898, 137 L.Ed.2d at 75 (quoting *Weaver, supra* ).

[¶ 29] Under the second part of the ex post facto analysis, the question is whether Watkins is disadvantaged by the retroactive application of a statute. *Delano v. Petteys,* 520 N.W.2d 606, 608 (S.D.1994). Clearly, this can be answered in the affirmative; it is "punishment beyond what was prescribed when the crime was consummated" to force Watkins to remain in prison until 1999 or 2000. *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24. His original good-time release date was October 26, 1990 and his flat-time release date was March 26, 1994.

[¶ 30] It is within the Board of Pardons and Parole's discretion to release an inmate on parole. Once an inmate is paroled, he remains "an inmate under the legal custody of the Department of Corrections until the expiration of his term of imprisonment." SDCL 24–15–1.1. In fact, a parolee "shall at all times be considered confined[.]" SDCL 24–15–13. In other words, the clock is still running, and the inmate/parolee is still serving his sentence. The Legislature realized there was a problem and amended SDCL 24–15–21 to prevent a parolee from violating parole and evading re-incarceration while his sentence ran out. While this was a valid concern and SDCL 24–15–21 an effective, necessary law, it *cannot* be applied to inmates whose crimes were committed before July 1, 1986 without violating the ex post facto clause.[6] *Lynce,* 519 U.S. at ——,

5. To alleviate serious prison overcrowding, Florida generously awarded early-release credits, known as "gain time" credits to most inmates. The statute authorizing gain time was enacted in 1983; Lynce was sentenced in 1986. At issue in *Lynce* was subsequent legislation expanding the list of offenders ineligible for the credits. Shortly thereafter, the Florida Attorney General issued an opinion interpreting the legislation as retroactively canceling all gain time credits awarded to inmates convicted of murder or attempted murder. The latter action resulted in the cancellation of credits and the re-arrest and re-incarceration of certain parolees, including Lynce. The

Court held that this was a violation of the ex post facto clause and prevented Florida from rescinding Lynce's gain time.

6. This does not leave the State without a remedy in that it can prosecute for escape. *See* SDCL 22–11A–2:

Any prisoner who escapes is guilty of a Class 4 felony. If such prisoner is under sentence of imprisonment, his sentence on conviction for an escape shall commence following the expiration of the term of the last sentence of his imprisonment.

117 S.Ct. at 898, 137 L.Ed.2d at 72; *Miller,* 482 U.S. at 430–32, 107 S.Ct. at 2451–52, 96 L.Ed.2d at 359–61; *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24; *Greenfield, supra.* As previously noted, the retroactive effect of the statute is analyzed without regard to the purpose behind its enactment.

[¶ 31] Despite the cursory treatment afforded *Weaver* and *Lynce* by the conference opinion, and its failure to mention *Greenfield,* these cases control our ex post facto analysis and no amount of citation to California and Colorado state law (*supra* ¶ 16) can overcome the dictates of the United States Supreme Court in this regard. It is an absolute tenet of constitutional law that the states are bound[7] by the United States Supreme Court's interpretation of the United States Constitution. *See Cooper v. Aaron,* 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 5, 16–17 (1958). The provisions of the Constitution, including the ex post facto clause, can only have one meaning. This court is bound to respect and enforce the United States Supreme Court's decisions regarding that constitutional provision. *Id.*

*See also* SDCL 22–11A–1:
> The term "prisoner" when used in this chapter, includes every person who is in custody by being under arrest or by being under process of law issued from a court of competent jurisdiction, whether civil or criminal. A prisoner at the time of his escape need not be in a place designated for the keeping of prisoners.
> The term "escape" when used in this chapter includes departure without lawful authority or failure to return to custody following a temporary leave granted for a specific purpose or limited period.

A Class 4 felony is punishable by ten years imprisonment, and a fine of up to $10,000.00. SDCL 22–6–1(6). As noted in SDCL 22–11A–2, the sentence must be served consecutively to the one in effect at the time of escape.

7. "That the states are bound" by United States Supreme Court constitutional interpretations is best stated in *Cooper v. Aaron,* 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 5, 16–17 (1958):

> Article VI of the Constitution makes the Constitution the "supreme Law of the Land." In 1803, Chief Justice Marshall, speaking for a unanimous Court, referring to the Constitution as "the fundamental and paramount law of the nation," declared in the notable case of *Marbury v. Madison,* 1 Cranch 137, 177, 2 L.Ed. 60, that "It is emphatically the province

[¶ 32] SDCL 24–15–21, as amended, can not be applied to Watkins without violating ex post facto constitutional provisions. Because the 1986 amendment is "more onerous than the prior law," it constitutes a violation of Watkins' rights under the ex post facto clause. *Petteys,* 520 N.W.2d at 610 (citing *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)).

## ATTACHMENT

## IN THE SUPREME COURT OF THE STATE OF SOUTH DAKOTA

Harold Clifford High Elk, Appellant,

v.

Joe Class, Warden, South Dakota State Penitentiary, Appellee.

No. 18870

### ORDER DIRECTING ISSUANCE OF JUDGMENT OF REVERSAL

The Court having, pursuant to SDCL 15–26A–87.1(C), considered all of the briefs filed

> and duty of the judicial department to say what the law is." This decision declared the basic principle that the federal judiciary is supreme in the exposition of the law of the constitution, and that principle has ever since been respected by this Court and the Country as a permanent and indispensable feature of our constitutional system. It follows that the interpretation of the Fourteenth Amendment enunciated by this Court ... is the supreme law of the land, and Art. VI of the Constitution makes it of binding effect on the States "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Every state legislator and executive and judicial officer is solemnly committed by oath taken pursuant to Art. VI, cl. 3, "to support this Constitution." [ ... ]
> No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it. Chief Justice Marshall spoke for a unanimous Court in saying that: "If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution becomes a solemn mockery...." *United States v. Peters,* 5 Cranch 115, 136, 3 L.Ed. 53.

Obviously, this mandate applies with equal force to all state courts, including this court.

in the above-entitled matter, together with the appeal record, and having concluded that it is manifest on the face of the briefs and the record that the appeal is meritorious on the following grounds: 1. that the issues on appeal are clearly controlled by settled South Dakota law or federal law binding upon the states, *Williams v. Lee,* 33 F.3d 1010 (8th Cir.1994), cert. denied, 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995), and 2. that the Board of Pardons and Paroles lacked authority to revoke appellant's good time credit, now therefore, it is

ORDERED that a judgment reversing the Judgment of the lower court be entered forthwith.

DATED at Pierre, South Dakota, this 11th day of July, 1995.

BY THE COURT

/s/ Robert A. Miller

Robert A. Miller

Chief Justice

(Chief Justice Robert A. Miller dissents.)

AMUNDSON, Justice (dissenting).

[¶ 33] I respectfully dissent, as the issues involved in this appeal are moot and should not be considered.

[¶ 34] The record reveals that Watkins was released from incarceration in the state penitentiary on January 31, 1997, almost six months after he appealed to this Court. "Traditionally, the satisfaction of a sentence by the service of a prison term renders the case moot and precludes a direct review of the conviction or sentence." *Moeller v. Solem,* 363 N.W.2d 412, 413 (S.D.1985) (citations omitted). If there is no longer a justiciable controversy, or if the judgment lacks a " 'practical legal effect,' " an action is moot. *Id.* (quoting *State v. Wilson,* 234 N.W.2d 140, 141 (Iowa 1975)).

[¶ 35] Although this Court possesses the "discretion to consider moot questions if they are of general public importance, have probable future occurrence, and risk probable future mootness[,]" *Boesch v. City of Brookings,* 534 N.W.2d 848, 849–50 (S.D. 1995) (citations omitted), no issue in this case affects the legal rights of the general public. SDCL 24–15–21 affects, at most, paroled in-

dividuals. Further, the scenario of an individual who is released from incarceration on parole and thereafter absconds from this State for six years is by no means a regular occurrence.

[¶ 36] Therefore, I would dismiss this appeal as moot.