2000 SD 35

Timothy J. BERGEE, Nicholas A.Cote, Larry A. Eaton, Glen R. Gunnoe, Minh Hoang, Bryan S. Holm, Daniel W. Knight, Edward A. Newa, Robert L. Phillips, Tod H. Richards, Scott A. Schmidt, Clint R. Terry, and Mark Weaver, Appellants,

v.

SOUTH DAKOTA BOARD OF PARDONS AND PAROLES, Appellee.

No. 21058.

Supreme Court of South Dakota.

Argued Dec. 2, 1999.

Decided March 8, 2000.

Rehearing Denied April 12, 2000.

Michael D. Bornitz of James & Associates, Yankton, South Dakota, Attorneys for appellant Bryan S. Holm.

Paul R. Boschma, Springfield, South Dakota, Attorney for appellants.

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, South Dakota, Attorneys for appellee.

KONENKAMP, Justice.

[¶ 1.] Is denial of parole an appealable decision for inmates sentenced to prison for crimes committed before July 1, 1996? The circuit court held that parole hearings are not contested cases subject to appeal under South Dakota's Administrative Procedure Act. We affirm. We also find no violation of equal protection when South Dakota's new parole laws were not applied retroactively.

## Background

[¶ 2.] Plaintiffs are inmates at the Springfield State Prison who were denied parole by the South Dakota Board of Pardons and Paroles. They are serving sentences for crimes committed before July 1, 1996. In some cases, the Board did not explain its denial. In other instances, the Board ruled that, considering their offenses, the inmates had not been imprisoned long enough or that society would not be protected if they were paroled. No transcript or other verbatim record was kept of the Board's hearings.

[¶ 3.] These inmates each appealed to the circuit court under the Administrative Procedure Act, SDCL 1–26. After consolidating the cases, the circuit court granted the Board's motion to dismiss, ruling that a decision to award or deny parole is not appealable. Before this Court the inmates contend: (1) parole hearings are appealable contested cases; (2) parole hearings before a single member of the Board violate SDCL 24–13–4.3; (3) parole hearings must be recorded like other contested hearings; (4) written reasons are required for denial of parole; (5) the Board acted arbitrarily and capriciously in refusing to return inmate Holm's good time; and (6) their equal protection rights were violated as a result of the Board's refusal to apply the provisions of SDCL ch. 24–15A to them.

## Standard of Review

[¶ 4.] Rulings on the constitutionality of laws and the construction of statutes are reviewed under the de novo standard. *State v. Shadbolt,* 1999 SD 15, ¶ 10, 590 N.W.2d 231, 233 (citing *Engelhart v. Kramer,* 1997 SD 124, ¶ 8, 570 N.W.2d 550, 552); *Wegleitner v. Sattler,* 1998 SD 88, ¶ 4, 582 N.W.2d 688, 689 (citation omitted). Statutes are presumed to be constitutional. *Kyllo v. Panzer,* 535 N.W.2d 896, 898 (S.D. 1995) (citing *Specht v. City of Sioux Falls,* 526 N.W.2d 727, 729 (S.D.1995)). To successfully challenge the constitutionality of

a statute, it must be shown beyond a reasonable doubt that the Legislature exceeded its constitutionally mandated power. *City of Chamberlain v. R.E. Lien, Inc.,* 521 N.W.2d 130, 131 (S.D.1994). Although "legislative acts are presumed to be constitutional, that presumption disappears when the unconstitutionality of the act is, 'clearly and unmistakenly shown and there is no reasonable doubt that it violates constitutional principles.'" *South Dakota Educ. Ass'n v. Barnett,* 1998 SD 84, ¶ 22, 582 N.W.2d 386, 392 (quoting *Poppen v. Walker,* 520 N.W.2d 238, 241 (S.D.1994) (citations omitted)). "If a statute can be construed so as not to violate the constitution, that construction must be adopted." *Cary v. City of Rapid City,* 1997 SD 18, ¶ 10, 559 N.W.2d 891, 893 (citations omitted).

## Analysis and Decision

### 1. Parole Hearings Not Contested Proceedings

▆▆▆ [¶ 5.] As the inmates became eligible for parole, each received a hearing under SDCL 24–15–8.[1] Now they seek court review.[2] They contend that a parole hearing is a "contested case" as that term is defined in SDCL 1–26–1(2).[3] Relying on

---

1. SDCL 24–15–8 provides in relevant part:

 When an inmate becomes eligible for consideration for parole, he shall be called before the Board of Pardons and Paroles to personally present his application for parole.... The board may issue an order to the Department of Corrections of the penitentiary that the inmate shall be paroled if it is satisfied that:
 (1) The inmate has been confined in the penitentiary for a sufficient length of time to accomplish his rehabilitation;
 (2) The inmate will be paroled under the supervision and restrictions provided by law for parolees, without danger to society; and
 (3) The inmate has secured suitable employment or beneficial occupation of his time likely to continue until the end of the period of his parole in some suitable place within or without the state where he will be free from criminal influences.
 Neither this section nor its application may be the basis for establishing a constitutionally protected liberty, property or due process interest in any prisoner.

2. Although this is not an appeal issue, we express our concern with the trial court's action in appointing counsel for these prisoners at public expense. There was no authority for such action. Under our statutory scheme, a judge has the prerogative to appoint counsel for a defendant in a criminal case (SDCL 23A–40–6), a petitioner in a habeas corpus proceeding (SDCL 21–27–4), a minor in a juvenile delinquency adjudication (SDCL 26–7A–31), a child and its parents in an abuse and neglect case (SDCL 26–7A–54 and 26–8A–18) and a mentally ill person in an involuntary commitment proceeding (SDCL 27A–11A–7). There is no statutory authority for a judge to appoint counsel to represent a plaintiff in a civil appeal from a parole board decision, such as in the cases presented here.

 The ramification of the court's decision to appoint counsel in this case is particularly important because Bon Homme County, as the site of Springfield State Prison, has a disproportionately large prison population (735 inmates as of January 31, 1999) in comparison to its general population of approximately 7,000. To require Bon Homme County to bear the financial burden imposed by court-appointed counsel fees for the inmates at Springfield for this type of expenditure is extremely unfair and inappropriate.

 However, now that the court has appointed counsel, the only fair resolution is to direct that the plaintiffs' legal costs be apportioned among the counties from which the prisoners were sentenced. (It does not appear that any of the prisoners in this litigation were sentenced from Bon Homme County). Specifically, the legal fees of attorney Michael Bornitz, who represented Bryan Holm, should be apportioned to the county from where he was sentenced. Similarly, the fees of attorney Paul Boschma, who represented the other twelve plaintiffs, should be apportioned among their sentencing counties.

 The apportionment of counsel fees in this situation is consistent with our treatment of court-appointed counsel costs in other instances where such appointments are statutorily prescribed. To hold otherwise would be inappropriate, unfair and unduly burdensome to Bon Homme County, and it would set a costly precedent for future prisoner suits.

3. "Contested case" is defined as:

 [A] proceeding, including rate-making and licensing, in which the legal rights, duties, or privileges of a party are re-

the statutory definition, the inmates first argue that a contested case is a proceeding concerning a privilege, and parole is a privilege. *See Watkins v. Class,* 1997 SD 76, ¶ 18, 566 N.W.2d 431, 435. Second, the inmates reason that because appealable contested cases include agency decisions, and because the Board is an agency required by SDCL 24–15–8 to conduct parole hearings, the Board's decisions are appealable. They assert that while some proceedings are exempted from the definition of contested cases, parole hearings are not among those excluded. Thus, the inmates conclude that the Legislature intended parole hearings to be included in the definition.

[¶ 6.] Parole hearings are not adversary in nature, a usual characteristic of contested cases. Witnesses are not ordinarily called, sworn, and subject to cross-examination. The rules of evidence are inapplicable, as the Board may consider any matter bearing on an inmate's fitness for release. "Parole is the discretionary conditional release of an inmate from actual penitentiary custody before the expiration of his term of imprisonment." SDCL 24–15–1.1. "A prisoner is never entitled to parole." *Id.* The Board *may* grant an inmate parole if, in the Board's judgment, it is in the best interest of both the prisoner and society. *Id.*

[¶ 7.] The inmates rely on *Tibbetts v. State,* 336 N.W.2d 658 (S.D.1983) to support their position that a parole hearing under SDCL 24–15–8 is appealable. In *Tibbetts,* we held that inmates have the right to judicial review of final decisions entered by the Board of Charities and Corrections. *Tibbetts* dealt with reduction of good time credit, however. A hearing before such action is required by SDCL 24–2–12.[4] "[M]inimal due process procedures must be followed before good time may be revoked." *Lewis v. Class,* 1997 SD 67, ¶ 21, 565 N.W.2d 61, 64 (citing *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

■ [¶ 8.] South Dakota has no similar statutory hearing requirement when discretionary parole is denied. Parole, "an executive branch function" under SDCL 24–15–8, is a matter of grace, a conditional release. *State v. Puthoff,* 1997 SD 83, ¶ 10, 566 N.W.2d 439, 442; *Watkins,* 1997 SD 76, ¶ 18, 566 N.W.2d at 435. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979). "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained." *Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2105, 60 L.Ed.2d at 677 (citation omitted); *see also Puthoff,* 1997 SD 83, ¶ 6, 566 N.W.2d 439, 442. A "hope" is not a protected due process interest. *Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2105, 60 L.Ed.2d at 677–78. To have a protected right under due process, persons must possess more than a one-sided expectance. They must have a legal "entitlement." *Id.* at 7, 99 S.Ct. at 2103–04, 60 L.Ed.2d at 675 (citing *Board of Regents of State Colleges*

---

quired by law to be determined by an agency after an opportunity for hearing but the term does not include the proceedings relating to rule making other than rate-making, proceedings related to inmate disciplinary matters as defined in § 1–15–20, or student academic or disciplinary proceedings under the jurisdiction of the Board of Regents or complaints brought by students attending institutions controlled by the Board of Regents about their residency classifica-

tion under §§ 13–53–23 to 13–53–41, inclusive[.]

SDCL 1–26–1(2).

4. SDCL 24–2–12 provides in part: "The disciplinary board, established by rules promulgated by the Department of Corrections, may take away time granted for good conduct … for violating any of the rules or policies of the Department of Corrections, following a hearing and subject to the approval of the warden."

*v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)).

 [¶ 9.] As there is no interest protected by due process when parole is denied under SDCL 24–15–8, and because parole is purely discretionary for these inmates, we conclude that parole hearings are not contested cases subject to appeal.

## 2. Single Board Member Parole Hearings Permissible

 [¶ 10.] The inmates were each granted a parole hearing before a single member of the Board. They urge us to interpret the statutes governing parole to require a hearing before multiple Board members: the member designated as a hearing officer along with two or more other members. SDCL 24–13–4.2 provides:

> The chairman of the board may designate individual parole board members as hearing officers who may conduct hearings, hear applications, take testimony and make recommendations to the board regarding the granting, denial, revocation, rescission or an administrative continuance of a parole. The recommendation shall be in writing and reviewed by the board or a panel of the board who may adopt, modify or reject the recommendations.

This statute must be read together with SDCL 24–13–4.3:

> The chairman of the board may designate panels of two or more board members to conduct hearings, hear applications, take testimony and take final action regarding the granting, denial, revocation, rescission or an administrative continuance of a parole.

 [¶ 11.] "We interpret statutes in accord with legislative intent." *Wiersma v. Maple Leaf Farms,* 1996 SD 16, ¶ 4, 543 N.W.2d 787, 789 (citation omitted). Intent should be determined first from the plain and ordinary meaning of the statutory language. *Id.* When a statute's language is clear, certain, and unambiguous, our function confines us to declare its meaning as plainly expressed. *US West Communications, Inc. v. Public Utilities Comm'n,* 505 N.W.2d 115, 123 (S.D.1993).

[¶ 12.] A plain reading of these two statutes reveals that, while a panel of two or more is required for final action on parole, an individual Board member may conduct a hearing. Nothing in the record discloses that any member alone took final action. To the contrary, the entire Board acted on each inmate's case and approved the action recommended by the single Board member. Hearings before one Board member were, therefore, not illegal or invalid.

## 3. Recording of Parole Hearings Not Required

 [¶ 13.] The inmates argue that even if parole hearings are not contested cases, a verbatim record should be kept so that a reviewing court may examine the decisions in the event improper criteria are used. We are not persuaded by this argument. In discussing review of parole procedures, the United States Supreme Court stated in *Greenholtz:*

> [T]here simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. This is especially true with respect to the sensitive choices presented by the administrative decision to grant parole release.

442 U.S. at 7, 99 S.Ct. at 2104, 60 L.Ed.2d at 675 (internal citations omitted). We hold that the Board is not required to record parole hearings.

## 4. Written Reasons for Parole Denial Not Required

[¶ 14.] The circuit court decided that the Board need not give parole applicants reasons for the denial of discretionary parole under SDCL 24–15. The inmates contend that without knowing the reasons parole was denied there is no opportunity for a meaningful review of the Board's decision. They contend this violates their due process rights. With unspecified reasons for

denial, they argue, there is no way to ensure the Board complied with statutory directives.

[¶ 15.] Parole boards have broad discretion in deciding whether to grant parole. *Farries v. United States Bd. of Parole*, 484 F.2d 948, 949 (7th Cir. 1973). When parole is denied, an inmate need not be given a reason. *Id.* The Court in *Greenholtz* stated:

> [W]e find nothing in the due process concepts ... that requires the Parole Board to specify the particular "evidence" in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release. The Board communicates the reason for its denial as a guide to the inmate for his future behavior. To require the parole authority to provide a summary of the evidence would tend to convert the process into an adversary proceeding and to equate the Board's parole-release determination with a guilt determination.

442 U.S. at 15–16, 99 S.Ct. at 2108, 60 L.Ed.2d at 680–81 (internal citations omitted).

[¶ 16.] In *Peck v. Battey*, 721 F.2d 1157 (8th Cir.1983), the Eighth Circuit considered denial of commutation and parole without providing reasons. The court explained that because the applicable statutes did not require the granting of commutation or parole upon a set criteria, the inmate did not have "a statutorily created expectation" of early release, and was therefore not entitled to written reasons for denial. *Id.* at 1159.

[¶ 17.] A grant or denial of parole is purely discretionary for these inmates. The statutory guidelines in SDCL 24–13–7 state that "the board of pardons and paroles *may* utilize the following standards in granting or denying paroles...." (Emphasis added.) The very nature of a parole hearing requires no reasons for denial. We affirm the circuit court on this issue.

### 5. Refusal to Return Inmate Holm's Good Time

[¶ 18.] One of the inmates in this appeal, Holm, asserts that the record does not reflect an adequate basis to support the Board's decision refusing to return his good conduct time because there were no findings of fact or conclusions of law. As the Board did not make a record to support its decision, Holm contends the only "reasonable" conclusion to be drawn is that the Board acted in an arbitrary and capricious manner. Holm appeared before the Board seeking both the return of good time and the grant of parole. The Board denied both requests because insufficient time had "elapsed since revocation."

[¶ 19.] In South Dakota, the Parole Board *may* restore good time to inmates, pursuant to its administrative regulations. "The inmate may request the return of withheld good time when next appearing for parole. The board may consider the inmate's institutional record since his return to the institution and may return any or all of the good time previously withheld." S.D.Admin.R. 17:60:03:13. SDCL 24–2–12.2 makes clear that the restoration of good conduct time is discretionary, stating that "[u]pon the recommendation of the warden, the secretary of the Department of Corrections may, at any time prior to the inmate's final discharge, restore time granted for good conduct which has been forfeited...." Because the return of good time is discretional, there is no protected liberty interest in its restoration. *See Hallmark v. Johnson*, 118 F.3d 1073, 1079–80 (5th Cir.1997) (state statutes give complete discretion in restoring good time credits; there is no protected liberty interest in the restoration of credits) (citing *Greenholtz*, 442 U.S. at 11, 99 S.Ct. at 2105, 60 L.Ed.2d at 669). Therefore, we find Holm's assertion meritless.

### 6. No Denial of Equal Protection

[¶ 20.] When the inmates sought parole, the Board reviewed their cases under

SDCL 24–15–8. This statute governs parole for those serving sentences for crimes committed before July 1, 1996. It cannot be applied to inmates serving sentences for crimes committed after July 1, 1996.[5] For those inmates the applicable statute is SDCL 24–15A–38.[6] Under the old parole system, governed by SDCL 24–15–8, parole is discretionary in that the Board *may* order parole if it is satisfied that certain factors have been met. In contrast, under the new system, SDCL 24–15A–38 allows the Board no discretion: inmates *shall* be granted parole if their program directives have been met.

■■■ [¶ 21.] The inmates argue that the application of the discretionary parole statute results in unequal treatment for them as compared with those to whom the nondiscretionary language of SDCL 24–15A–38 applies.[7] Because the granting of parole is discretionary, the inmates can be denied parole even when the Board is satisfied that the guidelines are met. However, when the language of SDCL 24–15A–38 is applied, parole must be granted if the requirements of the statute are achieved. This unequal treatment, the inmates assert, violates their right to equal protection under both Article VI, Section 18 of the South Dakota Constitution and the Fourteenth Amendment of the United States Constitution.[8]

■■■■ [¶ 22.] When analyzing an equal protection claim, we apply one of three tests determined by the character of the interest involved. *Lyons v. Lederle Lab.*, 440 N.W.2d 769, 771 (S.D.1989). Strict scrutiny applies when examining suspect classes or fundamental rights. *Id.* The substantial relation test applies to claims involving gender and legitimacy. *Id.* Finally, the rational basis test applies when analyzing all other classes. *Id.* As the rational basis test is applicable here, we analyze the asserted violation of equal protection in two aspects:

> The first part of the test is whether the statute does set up arbitrary classifications among various persons subject to it. The second part of the test is whether there is a rational relationship between the classification and some legitimate legislative purpose.

*City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331, 333 (1975) (citations omitted).

5. SDCL 24–15A–3 states in part: "The provisions of §§ ... 24–15–8 ... do not apply to any person sentenced to prison for a crime committed after July 1, 1996."

6. SDCL 24–15A–38 states:

 Each inmate shall be released from incarceration to parole supervision, without a hearing with the board, at the time of the inmate's initial parole date, if the inmate has substantively met the requirements of the individual program directive established by the department, agreed to the conditions of supervision and has an approved parole release plan.

7. The inmates also complain that "by rule and policy, parole directives" are required for "all inmates," including those sentenced for crimes committed before the effective date of the new parole laws. The "old law" inmates feel they are compelled to follow the new law's strictures without obtaining its benefits. As parole is at least partly dependent on an inmate's rehabilitation, the Board can reasonably demand that inmates accomplish some form of self-improvement. Using the same "program directives" for all inmates is not a form of discrimination, but an equal opportunity for the "old law" inmates to demonstrate their eligibility for parole.

8. Article VI, Section 18 of the South Dakota Constitution states: "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

 The Equal Protection Clause of the United States Constitution provides:
 No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

[¶ 23.] The inmates contend the classification is arbitrary because similarly situated inmates can be treated differently based simply on the date they committed a crime. They do not claim, however, that those convicted of committing similar offenses before July 1996 have received unequal treatment. "It does not violate the equal protection clause to require people sentenced before [the effective date of a newly enacted parole statute] to serve out their sentences under the system that was in place when they committed their crimes." *Huggins v. Isenbarger*, 798 F.2d 203, 207 (7th Cir.1986) (citation omitted). That those sentenced under later determinate sentencing statutes are "automatically" released does not mean that inmates sentenced under the old discretionary parole system are entitled to early release. *Id.*

[¶ 24.] The inmates believe that there is no rational relationship between the classification and the legislative purpose. They assert that the date the new parole law became effective was arbitrarily set and was not relevant to the purpose of the law. Other courts have ruled that legislative decisions not giving retroactive effect to new parole and penal laws properly relate to legitimate legislative purposes. *See Thompson v. Missouri Bd. of Parole*, 929 F.2d 396, 400–01 (8th Cir.1991) (avoiding the re-adjudication of sentences issued under prior law was rational basis to prospectively revise penal laws); *McQueary v. Blodgett*, 924 F.2d 829, 834 (9th Cir.1991) (improvement in sentencing rational governmental purpose); *State ex rel. Kost v. Erickson*, 353 N.W.2d 237, 240 (Minn.App. 1984) ("administrative difficulties in recalculating the sentences of the many convicts in prison under the indeterminate sentencing system" amounted to a rational basis for the decision).

[¶ 25.] Certainly, our Legislature could reasonably have had as its purpose avoiding redetermination of sentences handed down under the prior law, knowing that judges would have relied on then-existing parole eligibility in devising fair sentences.[9] Such purpose is rationally related to the classification. Therefore, we find that the inmates' equal protection rights were not violated by the Board's application of the old parole laws to those sentenced for crimes committed before the effective date of SDCL 24–15A–38.[10]

[¶ 26.] Affirmed.

[¶ 27.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

---

U.S. Const. amend. XIV, § 1.

9. The Legislature could also have concluded that the ex post facto clauses of the United States Constitution, U.S. Const art I, § 10, and the South Dakota Constitution, S.D. Const. art. VI, § 12, may prevent applying the new parole rules to inmates sentenced before the effective date of the new law.

10. The inmates seek advice, in the event their challenge to the parole system fails, on the proper procedure to obtain access to the courts. Advisory opinions are given in rare, constitutionally sanctioned cases. S.D. Const. art. V, § 5. We decline to render opinions serving only to establish precedent for anticipated disputes. *Boesch v. City of Brookings*, 534 N.W.2d 848, 850 (S.D.1995).